Elizabeth Tyree SHUTACK, et al.

v.

John Tyree SHUTACK, et al.

Equity No. 60322.

United States District Court,
District of Columbia.

March 25, 1981.

---

Alan S. Anderson, William D. Thompson, Washington, D. C., for Trustees.

Virginia L. Riley, Washington, D. C., guardian ad litem.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Pending before the Court is the motion of the Trustees, John A. Manfuso, Sr., Trustee, and National Savings and Trust Company, Successor Trustee (hereinafter "Trustees"), to transfer this matter to the Superior Court of the District of Columbia. With their motion, the Trustees have submitted a memorandum in support thereof, as well as a Report of Virginia L. Riley, the Guardian *ad litem* for the minors, the unknown and yet to be born next of kin, defendants herein. The Trustees have filed in Superior Court two separate actions which await the disposition of the instant motion. The first, *John A. Manfuso, Sr., Trustee, et al. v. Elizabeth Rigby Tyree Shutack*, Fiduciary No. 66–79, is a Complaint to Modify Trust Agreement and requests essentially an enlargement of the Trustees' power of investment. The second action, *In the matter of Josiah S. Tyree Trust*, Fiduciary No. 32–80, is a Petition to Modify Decree of Court Appointing Additional Trustee, requesting an equal division of commissions between the Trustees.[1]

In the instant action, on March 16, 1936, Justice Jesse C. Adkins appointed John A. Manfuso as co-trustee, subject to all the obligations and duties imposed by the deed of trust on the original trustees. The Order further directed that the Trustees file their annual accounts with the Court, and that "jurisdiction of this cause is retained for all orders which may arise in connection with the proceeding."[2] Since the entry of the Order, the Trustees have filed their annual accountings, and related matters, with the United States District Court for the District of Columbia.

The Trustees now seek transfer to the Superior Court of the District of Columbia of proceedings related to the Tyree Trust to conform to that Court's jurisdiction pursuant to D.C.Code § 11–921(a)(5).[3] The Guardian *ad litem* concurs that jurisdiction is properly vested in Superior Court. Addi-

---

1. The petitions which have prompted the motion to transfer relate to an *inter vivos* trust agreement executed April 14, 1925, between Josiah S. Tyree, grantor, and the District National Bank of Washington and Robert N. Harper, as Trustees, creating a trust initially for the benefit of the grantor's wife and subsequently for his heirs (hereinafter "the Tyree Trust").

2. Decree Appointing Additional Trustee, *Shutack v. Shutack*, Equity No. 60,322 at ¶ 3. In an earlier action, *District National Bank of Washington, D. C., Trustee v. Zelma Tyree Manfuso, et al.*, Equity No. 55,916, an order of July 21, 1933 appointed the National Savings and Trust Company of Washington as Successor Trustee upon the resignation of the District National Bank.

3. Section 11–921(a)(5) provides in pertinent part:

    (5) Immediately following the expiration of the thirty-month period beginning on [the] effective date [of this Act], the [Superior] court has jurisdiction (regardless of the amount in controversy)—

    (A) of any matter (at law or in equity)—

    .... (vii) involving the enforcement of the rendition of inventories and accounts by executors, administrators, collectors, guardians, and trustees required to account to the court; [and]

    ....

    (B) any matter (at law or in equity) described in subparagraph (A) which was begun in the United States District Court for the District of Columbia and not completed in that court before the expiration of such thirty-month period.

tionally, the Guardian *ad litem* asserts that the petitions filed in Superior Court in Fiduciary Nos. 66–79 and 32–80 are "new matters" and thus, under the jurisdictional grant embodied in D.C.Code § 11–921(a)(6),[4] properly the subject of proceedings in that local Court. There is no opposition to the motion to transfer.

When the Tyree Trust was created and when proceedings began in this action, the federal courts in the District of Columbia (both trial and appellate) were unique among the nation's Article III courts in that their jurisdiction extended beyond actions arising under the Constitution, laws, and treaties of the United States or cases instituted between citizens of different states. The United States District Court for the District of Columbia, serving the role of both a local and federal court, heard and decided the full range of local common law and equitable questions, in addition to its regular calendar of federal questions and diversity actions.

To realign the District of Columbia courts, to establish a court system for purely local matters not unlike the courts of the fifty states, and to return the federal courts in this District to the status of federal courts across the nation, Congress on July 29, 1970, enacted the District of Columbia Court Reorganization Act of 1970, Pub.L. No.91–358, Title I, 84 Stat. 475 (hereinafter "the Court Reorganization Act" or "the Act"); the Act took effect on February 1, 1971. The Court Reorganization Act in a three stage process, emphasizing an attainment sculptured to reality over the course of years, vested jurisdiction over all local civil and criminal matters in the newly created Superior Court of the District of Columbia and the District of Columbia Court of Appeals. The District Court retained matters over which it had exclusive jurisdiction or where its jurisdiction was established pursuant to D.C.Code § 11–501, relating to civil actions or other matters begun in District Court prior to the expiration of the thirty-month period following the effective date of the Act, as there qualified.

Holding aside momentarily the characterization of the Guardian *ad litem* that the two petitions are new matters, some elaboration of the Trustees' positions is in order. The Trustees' accounting duties are governed by D.C.Code § 11–921(a)(5)(A)(vii), which vests the Superior Court with jurisdiction over matters "involving the enforcement of the rendition of inventories and accounts by executors, administrators, collectors, guardians, and *trustees required to account to the Court.*" (emphasis added)

It is unquestioned that with the transfer of local matters to Superior Court, Congress nonetheless directed that the District Court retain jurisdiction for certain causes begun therein before the effective date of the Act and not completed prior to August 1, 1973.[5] Yet, specifically removed from this exception are actions such as the instant proceeding, *i. e.,* those encompassed by § 11–

---

**4.** Section 11–921(a)(6) provides:

(6) Immediately following the expiration of the thirty-month period beginning on such effective date, the court has jurisdiction (regardless of the amount in controversy) of any civil action or other matter, at law or in equity, brought in the District of Columbia. *Because the Act took effect on February 1, 1971, the thirty month period expired August 1, 1973.*

**5.** The exceptions are indicated in § 11–921(b), which states:

(b) The Superior Court does not have jurisdiction over any civil action or other matter (1) over which exclusive jurisdiction is vested in a Federal court in the District of Columbia, or (2) over which jurisdiction is vested in the United States District Court for the District of Columbia under section 11–501 (relating to civil actions or other matters begun in such court before the expiration of the thirty-month period beginning on the effective date of the District of Columbia Court Reorganization Act of 1970).

The reference to § 11–501 encompasses the list of matters over which jurisdiction is retained in *federal court. The relevant sub-section of* § 11–501 is the first, which gives the United States District Court for the District of Columbia jurisdiction over:

(1) Any civil action or other matter begun in the court before the effective date of the District of Columbia Court Reorganization Act of 1970 other than any matter over which the Superior Court of the District of Columbia takes jurisdiction under section 11–921(a)(4)(G) or 11–921(a)(5)(B).

921(a)(5)(B), which incorporates the clause (§ 11–921(a)(5)(A)(vii)) concerning inventories and accounts by trustees. It will be recalled that this action commenced with the complaint in December 1935, resulting in the order the following March, which directed that annual accounts by the Trustees be filed in this Court. The exception under the Court Reorganization Act for matters to be retained by this Court explicitly excludes actions related to the filing of accounts and inventories by trustees. Accordingly, Superior Court jurisdiction over this matter is governed by § 11–921(a)(5)(A)(vii): the case began prior to February 1, 1971 and was not completed prior to August 1, 1973, when the thirty month phase-in period ended.

That the Trustees filed their annual accountings with the federal court following the passage of the Act does not alter the conclusion that the action should be transferred to the local Superior Court. The Guardian *ad litem* determined that the general practice of filing such accounts with this Court by a number of trustees is widespread but erroneous. *See* Report of Guardian *Ad Litem* at 3. There is, however, no "jurisdiction by estoppel" that would require the matter to remain before this Court because of the Trustees' prior filings. Rather, Congress in a clear expression of its intention directed that supervision of trustees' accountability be under the jurisdiction of the Superior Court.[6]

Although Col. Theodore Cogswell, then Register of Wills, urged in 1936 that testamentary trustees should be required to file annual accounts in the probate court, 3 *Journal D.C. Bar Ass'n.* 5, 16–17, Victor S. Mersch, as Register of Wills in 1944, suggested that while historical practice produc-

ed regular accountings, dutifully audited, the District Court, sitting as probate court, was without authority to require *annual* submissions under its statute (then § 11–504) providing it power "to enforce the rendition of inventories and accounts by executors ... and trustees required to account to said court." Mersch, *Probate Court Practice in the District of Columbia*, 2nd ed., Vol. 1, § 121 n.99. It is therefore of interest to note that while the Guardian *ad litem* recommends (with the apparent concurrence of the Trustees) that the Trustees continue to file annual accountings in Superior Court, all are mindful that Superior Court Civil Rule 305(j) removes the requirement of annual accountings, save for good cause, for proceedings whose purpose is the appointment of a substituted or successor trustee.

The report of the Guardian *ad litem* reflects the existence of several hundred cases remaining in the United States District Court because of

a widespread conviction on the part of the Bar and Bench that inclusion of the word "trustees" in subparagraph (vii) of Section 11–921(a)(5)(A) was in error and would be deleted by corrective legislation. Since no corrective legislation was enacted, there should be no obstacle to the acceptance of jurisdiction by the Superior Court in the instant litigation.

Report of Guardian *ad litem* at 5. These cases, fiduciary concerns but not probate matters, requiring judicial supervision to insure protection of the assets, had commenced in the District Court under its general equity powers prior to August 1, 1973, seeking, *inter alia* and primarily, the appointment of successor or substituted trustees under testamentary or *inter vivos*

---

**6.** Although not as persuasive as jurisdiction found under § 11–921(a)(5), the question is simplified enormously if the 1979 and 1980 petitions filed in Superior Court are deemed "new matters," as the Guardian *ad litem* contends, and not continuations of the proceedings in this Court forty-five years ago. Fiduciary Nos. 66–79 and 32–80 arose after August 1, 1973, and thus would be governed by D.C.Code § 11–921(a)(6), which provides:

Immediately following the expiration of the thirty-month period beginning on such effective date [of the Act], the [Superior Court] has jurisdiction (regardless of the amount in controversy) of any civil action or other matter, at law or in equity, brought in the District of Columbia.

In short, were their petitions instituted in Superior Court anytime after August 1, 1973, there is no doubt that the local court would have jurisdiction.

trusts. Since the *probate* jurisdiction of the federal court had not included appointment or supervision of trustees, and the accounts of the trustees were not in the "probate division," some concluded that the 1970 Act's inclusion of "Trustees' accounts" in the transfer of "all probate matters" under § 11–921(a)(5)(A)(vii) was an aberration necessitating corrective legislation and stifling jurisdictional transfer. There has been no such amending legislation in the eleven years since the statute's enactment.

Any hesitation as to the propriety of transferring this action is dispelled by the legislative history of the Court Reorganization Act. Matters such as those relating to the appointment, compensation, and duties of trustees are purely local matters, and Congress intended to "terminate the anomaly in the District of Federal trial and appellate judges being required to devote their time and energy to matters of a purely local nature." H.R.Rep.91–907, 91st Cong., 2d Sess. at 23. The Conference Committee that recommended passage of the Act to the House and Senate specifically included actions such as the instant one in the vesting of jurisdiction to Superior Court by declaring that "[p]ending probate and fiduciary cases (other than matters in actual trial) are transferred along with jurisdiction over subsequent cases." H.R.Rep.91–1303, 91st Cong., 2d Sess. at 220 (Conference Report), *reprinted in* 116 Cong.Rec. 24,455 (1970).[7] *See generally* P. Bator, D.

Shapiro, P. Mishkin, H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 47 (2d ed. 1973). How could the instant case, with its repeated accountings and incomplete standing, be considered other than "pending?"

Universally, the courts and commentators have interpreted the Court Reorganization Act as a broad brushstroke by Congress to give the Superior Court exclusive jurisdiction over all purely local matters and to effectuate the transition of the federal courts in the District of Columbia from forums hearing and deciding common law and equitable cases to tribunals touching on those matters traditionally adjudicated by federal courts across the United States. Writing for a majority of the Supreme Court in *Palmore v. United States,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), Mr. Justice White recounted the manifold objectives of the Court Reorganization Act:

> ... Congress reorganized the court system in the District of Columbia and established one set of courts in the District with Art. III characteristics and devoted to matters of national concern. It also created a wholly separate court system designed primarily to concern itself with local law and to serve as a local court system for a large metropolitan area.

> From its own studies, Congress concluded that there was a crisis in the judicial system of the District of Columbia, that case loads had become unmanagea-

7. The consistent theme of the legislative history is simply put: Congress sought to make the federal courts in the District like federal courts elsewhere, and the District of Columbia courts essentially like the local courts in the fifty States.

> A major feature of S.2601 is the transfer of jurisdiction over District of Columbia litigation from the U.S. District Court for the District of Columbia to the new Superior Court for the District of Columbia. This transfer will bring the jurisdiction of the U.S. courts in the District of Columbia in line with the jurisdiction exercised by the Federal Courts of the several States, and will give the local courts jurisdiction over all purely local matters.

S.Rep.No.91–405, 91st Cong., 1st Sess. at 5.

After the Conference Committee formulated the Act in its final form, the Senate Managers concluded:

> The Superior Court is to have exclusive general jurisdiction over all local matters, civil and criminal—consistent with the move toward home rule in the District as well as for purposes of efficiency and expedition.
>
> . . . .
>
> Commensurately, the Federal district court for the District of Columbia is to regain its rightful status as a Federal tribunal, devoted on a full time basis to Federal business, like all other United States District Courts.

Senate Committee on the District of Columbia, 91st Cong., 2d Sess., *Statement of the Managers on the Part of the Senate Submitted Regarding the Conference Action upon S.2601, the President's Crime Legislation for the District of Columbia* 5 (Comm. Print 1970).

ble, and that neither those matters of national concern nor those of strictly local cognizance were being promptly tried and disposed of by the existing court system. The remedy in part, was to relieve the regular Art. III courts, that is, the United States District Court for the District of Columbia, and the United States Court of Appeals for the District of Columbia Circuit, from the smothering responsibility for the great mass of litigation, civil and criminal that inevitably characterizes the court system in a major city and to confine the work of those courts to that which, for the most part, they were designed to do, namely, to try cases arising under the Constitution and the nationally applicable laws of Congress. The other part of the remedy, equally essential, was to establish an entirely new court system with functions essentially similar to those of the local courts found in the 50 States of the Union with responsibility for trying and deciding those distinctively local controversies that arise under local law . . . having little, if any, impact beyond the local jurisdiction.

*Id.* at 408–409, 93 S.Ct. at 1681–1682 (citations omitted). *See also id.* at 392 n.2, 93 S.Ct. at 1673 n.2.

Five years after *Palmore*, the District of Columbia Court of Appeals, created by the Court Reorganization Act as the appellate tribunal in the District, interpreted Congress' goal in passing the Act as clear intent to vest the Superior Court with jurisdiction over *all* local matters. The Court elaborated:

Underlying the [Court Reorganization Act] . . . was Congress' wish to delineate the functions of the federal and local court systems in the District of Columbia. The federal courts were to be relieved of long-standing local responsibilities and were to become courts of limited jurisdiction, as are federal courts elsewhere. The local courts were to be given powers analogous to those of state courts, with the District of Columbia Court of Appeals constituted as the final judicial authority in the jurisdiction on matters of local law. Motivating this new arrangement was a

desire to streamline jurisprudence in the District of Columbia; to eliminate the duplication of effort promoted by two separate court systems of often overlapping jurisdiction.

*Reichman v. Franklin Simon Corp.*, 392 A.2d 9, 12 (D.C.1978) (footnotes omitted). *See also id.* at 12 n.5.

Another judge of this Court has already concluded that jurisdiction over fiduciary matters lies in the Superior Court. In *Dodge v. Dodge*, Equity Nos. 24,679 and 25,109, the Successor Trustee attempted to persuade the Court that the United States District Court for the District of Columbia retained jurisdiction over actions concerning fiduciaries. In rejecting this position, Judge June L. Green in 1973 held that the Act "required a transfer of jurisdiction in matters of probate or related problems to the Superior Court of the District of Columbia." Both the Trustees and the Guardian *ad litem* for the defendants cite *Dodge* and urge this Court to follow its holding herein.

In a seminal article published shortly after the passage of the Court Reorganization Act, Wesley S. Williams, Jr., who had served as Legal Counsel to the Senate Committee on the District of Columbia when the Act was drafted, emphasized the compelling thrust of the enactment:

The provisions of the Court Reorganization Act on jurisdiction over local matters are designed to assign to the United States District Court for the District of Columbia the status of a federal district court like other federal district courts, with only such additional functions as relate to the national character of the District of Columbia, the seat of the federal government. The United States Court of Appeals for the District of Columbia Circuit is intended to be a federal circuit court like all other federal circuit courts, with only such additional functions as the jurisdiction of the district court from which it hears appeals or the national character of the circuit might warrant.

The inevitable complement to these concepts consists of a congressional intent first to create in the new Superior Court of the District of Columbia a local trial bench of general and unlimited jurisdiction, equivalent to a hypothetical state trial court with jurisdiction in the state over all court business, no matter how insignificant or how consequential. Secondly, the intended creation of purely federal district and circuit courts has its complement in the assignment to the District of Columbia Court of Appeals of the role of 'highest court of the District of Columbia.'[8]

Williams' exposition of the congressional purpose, contemporaneous with the Act's passage, reveals the sweeping goal of the draftsmen to create in the District of Columbia a court system designedly functioning like that in the fifty states: a local system created to decide all cases of local significance and a federal court system enabled finally to serve its proper role under Article III.[9]

Although more artful expression would have averted litigation, closed any gap in the law's thrust, and crushed jurisdictional confusion (however minimal), it is evident that it would gorge congressional design to retain in federal court this vestigial of local matters. Superior Court, with its fiduciary and probate jurisdiction, is fully empowered to exercise its rightful authority over all local matters. Since August 1, 1973, Superior Court has jurisdiction "of *any* matter . . . involving the enforcement of the rendition of . . . accounts by . . . trustees required to account to the Court; . . . and

*any* [such] matter . . . which was begun in the United States District Court for the District of Columbia and *not completed* in that Court before [August 1, 1973]." §§ 11–921(a)(5)(A)(vii), 11–921(a)(5)(B) (emphasis added).

The Trustees' motion to transfer simply invokes the statutory command. In the grant of that motion, this Court simply honors that mandate.

---

8. Williams, *District of Columbia Court Reorganization, 1970,* 59 Geo.L.J. 477, 533–34 (1971) (footnotes omitted).

9. Williams also refers to the opening provision of the Act, which establishes the Superior Court and the District of Columbia Court of Appeals "pursuant to article I of the Constitution," and which denotes the "Federal Courts" as created "pursuant to article III of the Constitution." *See* D.C.Code § 11–101. This clause, Williams argues,

> manifests the intent of Congress to create a judicial branch of the local government of the District of Columbia akin to the judicial branch of state governments and similarly

independent of, and operating outside of, the federal judicial branch.
Williams, *District of Columbia Court Reorganization, 1970,* 59 Geo.L.J. 477, 490 (1971).

That the local courts are intended to parallel in function and scope the courts of the fifty states, and that the federal courts in the District of Columbia are meant to equate the powers and duties of traditional Article III courts are, as has been demonstrated, *supra,* constantly recurring themes in the literature surrounding the Act. Whatever else the legislative history and other analyses may indicate, this cardinal principle dominates.