In re ESTATE OF Elizabeth Tyree SHUTACK, John A. Munfuso, Sr., et al., Appellants.

In re Edward McLEAN, American Security Bank, N.A., Appellant.

In re Zaidee Gaff LANGHORNE, American Security Bank, N.A., Appellant.

In re Arthur P. DRURY, et al., National Savings and Trust Company, Appellant.

Nos. 82-1347 and 82-1436 to 82-1438.

District of Columbia Court of Appeals.

Argued July 6, 1983.

Decided Nov. 3, 1983.

Michael F. Curtin, with whom Mark S. Tenenbaum, Washington, D.C., was on brief, for appellants. Alan S. Anderson and William D. Thompson, Washington, D.C., also entered appearances for appellants.

Nicholas D. Ward, Washington, D.C., amicus curiae.

John K. Drury and John M. Lynham, Washington, D.C., also entered appearances.

Before KERN, MACK and PRYOR, Associate Judges.

KERN, Associate Judge:

Appellants, who are trustees under four different trusts,[1] bring this consolidated appeal from orders of the Probate Division of the Superior Court of the District of Columbia denying their petitions [2] which sought approval of the annual accounting of the trust. The trial court rejected such petitions on the ground that the court lacked jurisdiction under the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, Title I, 84 Stat. 475, D.C.Code §§ 11–101 *et seq.* (1981) ("Court Reform Act" or "Act").

Prior to filing their petitions with Superior Court, the trustees under one of the trusts [3] had filed a motion to transfer the trust accounting matters to Superior Court from the United States District Court for the District of Columbia (District Court) which had supervised all the trusts here since their creation before the effective date of the Act. The District Court concluded that the jurisdiction of the trust matters lay in the Superior Court pursuant to the provisions of the Court Reform Act and granted the motion.[4] *Shutack v. Shutack,* 516 F.Supp. 219 (D.D.C.1981).

The Superior Court based its denial of jurisdiction over the instant cases upon its prior ruling in *Chumbris v. Chaconis,* 110 D.Wash.L.Rptr. 1521 (D.C.Super.Ct. May 25, 1982), that the Court Reform Act did not vest any jurisdiction: (1) in the Probate Division of the Superior Court over *trust*

---

1. The four trusts are the Tyree Trust, McLean Trust, the Langhorne Trust, and the Drury Trust.

2. In two of the instant cases the filing for approval of the annual accountings was known technically as an "Order Ratifying Report of the Deputy Auditor Master."

3. The subject trust was the Tyree Trust.

4. Pursuant to the District Court's decision, all of the instant actions were transferred to the Probate Division of Superior Court.

cases, and (2) over cases, such as the instant cases, begun in the United States District Court *before* the effective date of the Act, February 1, 1971. The trial court rested its conclusion upon an interpretation of the Act with which we cannot agree.

We turn now to the applicable provisions of the Act which are central to our discussion.

## I.

D.C.Code § 11–501(1) (1981), provides that the District Court has jurisdiction of:

> Any civil action or other matter begun in the court before the effective date of the [Act] *other than* any matter over which the Superior Court of the District of Columbia takes jurisdiction under Section 11–921(a)(4)(G) or 11–921(a)(5)(B). [Emphasis added.]

Section 11–921(a) states in pertinent part:

> Except as provided in subsection (b), the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia. Such jurisdiction shall vest in the court as follows:
>
> \*     \*     \*     \*     \*     \*
>
> (5) Immediately following the expiration of the thirty-month period beginning on [the] effective date [of this Act], the [Superior] court has jurisdiction (regardless of the amount in controversy)—
> (A) of any matter (at law or in equity)—
> .... (vii) involving the enforcement of the rendition of inventories and accounts by executors, administrators, collectors, guardians, and trustees required to account to the court;
> (B) any matter (at law or in equity) described in subparagraph (A) which was begun in the United States District Court for the District of Columbia and not completed in that court before the expiration of such thirty-month period.

In support of its first ground for denying jurisdiction in *Chumbris, supra,* at 1521, 1527, the trial court viewed the words "involving ... trustees required to account to the court" of Section 11–921(a)(5)(A)(vii) as historically applying *only* to *probate* matters and *not* including the filings of accounts by trustees, as fiduciary matters, which traditionally had been brought in equity rather than in probate in the District Court.

In construing the sections of the Act to resolve the issue of proper jurisdiction over the instant cases, we are required to address whether the plain language in Section 11–921(a)(5)(A)(vii), *viz.,* "any matter ... involving ... the rendition of ... accounts by ... trustees required to account to the court," applies to the approval of the annual accountings of the instant trusts. It is true that historically, in the District of Columbia, cases involving trust accountings and other similar fiduciary matters did come within the equity jurisdiction of the District Court under its general equity powers, *Shutack, supra,* 516 F.Supp. at 222–23, and trustees had never been required to account to the Probate Division of the District Court. On the other hand we must, in construing the sections of the statute at issue, take the plain language of the statute as ordinarily conclusive, if it is clear. *Mulky v. United States,* 451 A.2d 855 (D.C. 1982). To see if the language is plain and admits of no more than one meaning, we must first look at the language of the statute standing alone. *United States v. Young,* 376 A.2d 809 (D.C.1977). The words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them. *United States v. Thompson,* 347 A.2d 581 (D.C.1975).

An examination of § 11–921(a)(5) shows that both subsections (A) and (B) include "any matter" within the jurisdiction of the Superior Court regardless of whether such matters are "at law or equity." This broad language by its terms is inclusive and subsumes part (A)(vii) of Section 921(a)(5) ("involving ... trustees required to account to the court") as a matter either of law or equity. The reading of subsection (A)(vii) on its face as applying to all matters of

equity as well as at law in our view renders the historical distinction between matters within the probate and equity jurisdictions, respectively, of the District Court prior to the Act[5] as unpersuasive on the meaning of the Act.

█ In construing the acts of Congress, we must give effect to the legislative intent and give the legislative words their natural meaning. *Citizens Association of Georgetown v. Zoning Commission of the District of Columbia,* 392 A.2d 1027, 1032 (D.C.1978) (en banc), quoting *Rosenberg v. United States,* 297 A.2d 763, 765 (D.C.1972) (citations omitted). Also, we must read the words in their legislative context, *Citizens Association of Georgetown, supra,* 392 A.2d at 1033.

█ The clearly expressed objectives of Congress in its enactment of the Court Reform Act must take precedence over whatever was the historical practice prior to the Act.[6] Certainly, the congressional intent was clearly that the federal courts of the District shall be relieved of matters more suitable for resolution in the local courts. *Palmore v. United States,* 411 U.S. 389, 403–04, 93 S.Ct. 1670, 1679–80, 36 L.Ed.2d 342 (1973). *See also id.* at 392 n. 2, 93 S.Ct. at 1673 n. 2; *Reichman v. Franklin Simon Corp.,* 392 A.2d 9, 12 (D.C.1978).

The legislative context in which the Court Reform Act was enacted showed that Congress' primary concern and objective was to relieve the District of Columbia federal courts of *all* local matters and to transfer such local matters to a local and unified court system for the District of Columbia. Congress intended that the federal courts would have limited jurisdiction in the District of Columbia, exactly like the other federal courts throughout the United States, and that the administration of local matters, which had reached the point of taxing the federal court's resources, would be more expeditiously handled by an expanded local court system. *Reichman v. Franklin Simon Corp., supra,* 392 A.2d at 12; *Shutack, supra,* 516 F.Supp. at 223.[7] Another objective of the Act was the elimination of a dual court system in the District of Columbia which had made it impossible for one tribunal to adjudicate all the claims of the parties in one action, *see Reichman, supra,* 392 A.2d at 12. The result was that the former Court of General Sessions with limited jurisdiction became a court of general jurisdiction with the plenary power to adjudicate *all* civil actions at law or in equity involving local law. *Andrade v. Jackson, supra,* 401 A.2d at 992.

As we enunciated in *Andrade,* "[a]lthough Superior Court is separated into a number of divisions, these functional divisions do not delimit their power as tribunals of the Superior Court with general jurisdiction to adjudicate civil claims and disputes. *See* D.C.Code 1973, § 11–910." *Id.* at 992–93. We also stated there:

Congress also transferred probate jurisdiction to the Superior Court. The Court Reform Act vested the Superior Court with jurisdiction over any civil actions at law or in equity, and over all probate

---

5. *See Shutack, supra,* 516 F.Supp. at 222–23. *Chumbris, supra,* at 1527–28.

6. Able and diligent amicus counsel for the Superior Court cites *Jones v. Dunlap,* 73 App.D.C. 59, 115 F.2d 689 (1940), in support of the historical argument. However, we have noted and distinguished this case previously in addressing the change in the nature of Superior Court's jurisdiction from the narrowly circumscribed jurisdiction of the District Court sitting in probate. *See Andrade v. Jackson,* 401 A.2d 990, 992 (D.C.1979).

7. *Given the clear objectives of Congress in enacting under the Act, neither are we persuaded* by references to the *early stages* of the Act's legislative history recounting the Senate and House approaches to the transfer of trustee's accounts as concerned only with the probate jurisdiction. As the District Court observed in *Shutack,* the Conference Committee ultimately included pending matters such as those in the instant cases by stating that "[p]ending probate and fiduciary cases are transferred along with jurisdiction over subsequent cases." *Shutack, supra,* 516 F.Supp. at 223, quoting H.R.Rep. No. 91–1303, 91st Cong., 2d Sess. at 220 (Conference Report), *reprinted in* 116 CONG.REC. 24,-455 (1970).

matters. *See* D.C.Code 1973, § 11–921(a)(5–6). Moreover, under the Act, there is no longer a "Probate Court" *as a court of limited jurisdiction.* Rather, the jurisdiction previously vested in that court is now vested in the Superior Court, a court of general jurisdiction. *See* D.C. Code 1973, §§ 16–3101 and 18–101. *Id.* at n. 5. [Emphasis added.]

*Andrade, supra,* 401 A.2d at 992, n. 5 [emphasis added.]

■ In sum, we are persuaded that, whatever the historical practice may have been in the District Court, the Act provides for the transfer of these cases, involving accounts by fiduciaries, to the Superior Court in light of the statute's plain meaning, the intent of the Act and the broad language of Section 11–921(a)(5)(A).

## II.

■ We turn now to the second ground of the trial court's ruling on appeal. Although the Superior Court did acknowledge the paramount intent of Congress to divest the District Court of its jurisdiction over essentially all local matters, it concluded this transfer was to take place only *in futuro*.[8] *Chumbris, supra* at 1527–28. It examined the words of Section 11–921(a)(5)(B), which provided for jurisdiction in the Superior Court over "any matter (at law or in equity) described in subparagraph (A) [involving trustees required to account to the court] which was begun in the United States District Court for the District of Columbia and not completed in that court before the expiration of such thirty-month period." It concluded from this language that the Superior Court was conferred jurisdiction only over cases which had *both*

been begun and still were not completed in the District Court within the thirty-month transition period after enactment of the Act. According to the trial court, while this section read by itself could appear to include *any* matters that had begun at any time in the past, its effective construction changed when it was read in conjunction with subsection (2) of § 11–921(b), which stated:

> The Superior Court does not have jurisdiction over any civil action or other matter ... over ... which jurisdiction is vested in the United States District Court for the District of Columbia under section 11–501 (relating to civil actions or other matters begun in such court before the expiration of the thirty-month period beginning on the effective date of the District of Columbia Court Reorganization Act of 1970).[9]

In the court's view, the parenthetical words of § 11–921(b)(2) "(relating to civil actions ... or other matters [under § 11–501] begun before the expiration of the thirty-month period beginning on the effective date of the ... [Act])" meant "begun before a period of time whose expiration is thirty months after its beginning." Therefore, the trial court concluded that § 11–921(a)(5)(B) excluded from Superior Court jurisdiction matters which had begun in the District Court prior to the effective date of the Act. *Chumbris, supra* at 1527.[10]

■ While we recognize that the statutory language is somewhat ambiguous, were we to adopt the reasoning of the Superior Court in the instant case we would be continuing the situation Congress sought to change by enacting the Act: actions pend-

---

8. The Superior Court's view is exemplified by its Amended Order Declining Jurisdiction of October 6, 1982 in which the court continued to decline jurisdiction over the Tyree Trust accounting but stated that this ruling did not affect two other actions under the same trust (1) requesting an enlargement of the trustee's power of investment, and (2) seeking equal division of commissions between the trustees which had arisen well after the thirty-month transitional period.

9. The other exception of D.C.Code § 11–921(b) (1981), addresses the exclusive jurisdiction vested in the District Court and is not relevant to the issue of statutory construction here.

10. As we have noted, the Superior Court did conclude to take jurisdictions over accountings by appellants after the thirty-month transition period. *Supra* at note 7.

ing in two *different* court systems arising out of the *same* matter. *See Reichman v. Franklin Simon Corp., supra,* 392 A.2d at 12. The purpose of the Act, among others, was the gradual transfer of *all* matters of a local nature away from the federal to the local court. To achieve this ordered transfer Congress provided in the Act for transition periods during which the District Court had *temporary* jurisdiction over certain matters. After the expiration of the applicable transition period (in the instant cases, thirty months),[11] *pending* fiduciary and probate matters, as Congress clearly intended, were to be finally transferred from the federal to the local court system. H.R.Rep. No. 91–1303, *supra. Shutack, supra,* 516 F.Supp. at 223.[12]

Given the purposes of Congress in enacting the Act to transfer all matters of a local nature, and the legislative context in which such transfer was effected, we conclude that the transfer of jurisdiction under Section 11–921(a)(5)(B), was not confined to matters beginning *only* during the thirty-month transition period.

Accordingly, the orders of the Superior Court denying jurisdiction in the instant trust cases are reversed and the cases are remanded to Superior Court for further proceedings consistent with this opinion.

*So ordered.*

11. D.C.Code § 11–501 (1981), indicates two different groups of matters over which the District Court would have temporary jurisdiction for 18 months and 30 months. Sections 11–921(a)(4) and (5) address the statutory plan for transitional jurisdiction as well. *See Reiser v. District of Columbia,* 580 F.2d 647, 650 (1978). Cf. *Reichman, supra,* 392 A.2d at 12, 13.

12. *See* Williams, *District of Columbia Court Reorganization,* 59 Geo.L.J. 477, 542 (1971), where the author, who served as counsel to the Senate Committee, stated:

It should be recalled that, although the federal district court retains jurisdiction over cases "begun in the court" prior to February 1, 1971, the retention is not without limitation as to time and respect to certain matters. *This qualification is* occasioned by the fact that certain pending cases are shifted from the federal to the local trial court, even

though the cases may have been properly commenced in the federal court before the Act's effective date.

\* \* \* \* \* \*

No doubt the rationale underlying the shifting of pending cases is that these fiduciary matters routinely require that the trial court, heretofore the United States district court, retain jurisdiction for an extended period of time, even for years, far beyond the duration of any given proceeding. To leave pending cases in this context in the federal district court after the transfer of prospective jurisdiction for a disproportionately long time, thereby compounding the problem and reconciling local and federal appellate rulings, and substantially deviating from the intended plan of completing the federal court's change of status within a relatively brief period. *Id.* at 556.