## BERNSTEIN et al. v. LIME.
### No. 1266.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 30, 1952.

Decided Nov. 4, 1952.

Edward A. Aaronson, Washington, D. C., with whom Mark P. Friedlander, Washington, D. C., was on the brief, for appellants.

Herman Miller, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This was an action for possession of housing accommodations brought on the ground that the tenancy had been terminated by the service of a 30-day notice to quit and that the premises were not subject to the District of Columbia Rent Control Act. The case was tried by jury, and from an adverse verdict and judgment plaintiffs bring this appeal.

At the trial, defendant having conceded the validity of the 30-day notice, plaintiffs attempted to prove that they were entitled to possession since the premises were no longer under rent control. Code 1951, Supp. I, § 45–1611(a)(3) expressly excluded from control *any building used as a licensed rooming house,* and plaintiffs proved that defendant for four years prior to the filing of this suit had applied for and obtained a license to operate a rooming house. On this showing plaintiffs rested their case.

Defendant testified to the general effect that while the premises were *licensed* as a rooming house its *use* was actually that of a tenement house,[1] and therefore still under rent control. Defendant stated that she had turned the control of these rooms over to the occupants; that she did not furnish them with linens; nor did she make their beds or clean their rooms. She further testified that the occupants of these rooms had housekeeping privileges and hot plates and refrigerators.

At the conclusion of all the evidence both parties moved for a directed verdict, which

---

1. A tenement house is defined by the Licensing Regulations of the District of Columbia as "any building or part thereof containing three or more tenements [a tenement means one or more habitable rooms other than an apartment * * * under the exclusive control of the occupant or occupants thereof] occupied or offered for occupancy for a consideration, or any building or part thereof containing any combination of three or more tenements and apartments, of which not more than two are apartments, occupied or offered for occupancy for a consideration."

motions were denied. The case was submitted to the jury under the following instructions:

" 'The term "rooming house" means any building or part thereof other than a hotel, containing sleeping accommodations occupied for a consideration by * * * five or more persons * * * and which accommodations are not under the exclusive control of the occupant thereof.'

"You are instructed that if you find that the premises was *licensed* as a rooming house and you further find that the premises were *used* as a rooming house, as I have heretofore defined rooming house, then your verdict should be for the plaintiff * * *.

"If, however, you find from the evidence that the premises, although *licensed* as a rooming house, was not in fact *used* as such, in accordance with the definition of rooming house which I have given to you, then your finding should be in behalf of the defendant." (Emphasis supplied.)

■ The first and principal error alleged is that the trial judge erred in instructing the jury that the plaintiffs must not only prove that it was a licensed rooming house but must also show that it was in fact used as a rooming house. To state the plaintiffs' contention in another way, if defendant had a license to operate a rooming house, that fact alone operated to decontrol the premises regardless of the manner in which the premises were used. We are of the opinion that the judge's interpretation of the law was correct.

■ In this connection it is well to remember that exemptions from the operation of the Rent Act are to be narrowly construed giving due regard to the plain meaning of statutory language and the intent of Congress. Nor must we forget the rule that the burden rests upon a landlord to prove that the building comes within the decontrolled exception.[2]

■ In June 1951 Congress extended the life of the Rent Act and revised it in several respects. In order to discontinue control over certain types of accommodations, Congress expressly excluded particular premises from the definition of "housing accommodations." Two of these exclusions read in part:

"but the term 'housing accommodations' shall not include * * * (2) furnished nonhousekeeping accommodations, * * * which are rented as rooms without kitchen privileges or facilities for cooking * * * or (3) any building used as a licensed rooming house." [3]

Clause (2) accomplished the decontrolling of furnished nonhousekeeping accommodations *rented as rooms* without kitchen privileges. This eliminated rent ceilings on individual rooms in a building even though the building itself was not being used as a rooming house, but this subsection did not decontrol the entire building. However, clause (3) did remove the entire building from control in those situations in which the building was being used as a rooming house.

■ In defining a rooming house Congress used the description *licensed rooming house*. Since this license was to be issued by the District of Columbia Government, we must look at the licensing act of the District and the *regulations promulgated* thereunder. In the regulations adopted for the purpose of licensing[4] and regulating certain types of housing in the District of Columbia it is provided that "the term 'rooming house' means any building or part thereof * * * containing sleeping accommodations occupied for a consideration by * * * five or more persons * * * which accommodations are *not under the exclusive control of the occupants thereof*." (Emphasis supplied.) In addition to defining such premises as a *licensed rooming house* the Rent Act specifically says *any building used* in that manner. While giving the licensing portion

2. Woods v. Oak Park Chateau Corporation, 7 Cir., 179 F.2d 611.

3. Code 1951, Supp. I, § 45–1611(a).
4. Savage v. District of Columbia, D.C. Mun.App., 54 A.2d 562.

full weight, we must also consider these additional words to have equal force and effect.

One of the reasons for these exclusions advanced by the Administrator of Rent Control for the District at the Congressional hearing on this revision [5] was that there was no acute shortage of rooming house accommodations and that there was, consequently, no longer any need to continue control over them.

As is clear from the language itself, the premises must be *used* as a rooming house as well as *licensed* as one. Since the licensing regulations of the District of Columbia define a rooming house as one providing accommodations *"not under the exclusive control of the occupants thereof,"* it must follow that these accommodations, *which were under exclusive control of the occupants,* do not qualify as a rooming house regardless of the fact that a license was issued permitting its use as such.

Affirmed.

5. House of Representatives Hearings before the Committee on the District of Columbia, Subcommittee on the Judiciary —Extension of Rent Control for the District of Columbia—May 28, 1951—Washington, D. C.