Gloria GIBSON, Appellant,

v.

Walter JOHNSON, Appellee.

No. 82–443.

District of Columbia Court of Appeals.

Argued Sept. 12, 1984.

Decided Jan. 9, 1985.

As Amended June 5, 1985.

Roy L. Pearson, Jr., Washington, D.C., Neighborhood Legal Services Program, for appellant.

Stephen O. Hessler, Washington, D.C., for appellee. Lisa J. Dessel, Washington, D.C., was on the brief for appellee.

Before BELSON and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

This appeal is from a judgment entered in the Landlord and Tenant Branch of the Superior Court in favor of the landlord, Walter Johnson (appellee), for possession of the leased premises and for unpaid rent. The tenant, Fannie Daniels (appellant),[1] challenged the decision on numerous grounds contending that the court (1) erred in striking her counterclaims, (2) erroneously concluded that the premises were exempt from rent ceiling limitations of the District of Columbia Rental Housing Act of 1977, and (3) failed to find that she had not been served with the required notice to quit the premises.[1A] We conclude that the assertions of error are without merit, and accordingly, affirm.

On October 11, 1977, Fannie Daniels entered into a rental lease agreement with Carl W. Johnson for the occupancy, on a month-to-month basis, of an apartment at premises 612 14th Place, N.E. By its terms, the lease was assignable and the monthly rental was $109. The lease also contained a covenant whereby Ms. Daniels expressly waived her right to 30 days' notice to quit the premises in the event she breached any provision of the lease.[2] The lease provided further that all covenants were binding upon the assigns of the landlord.

On September 15, 1980, Carl Johnson and his wife, Bobbie Jean Johnson, conveyed by deed recorded October 12, 1980, all of their right, title and interest in and to the subject property to their son, Walter Johnson, appellee herein. On or about September 26, 1980, appellee made claim with the rent administrator for exemptions from the rent ceiling. Shortly thereafter, appellee served upon appellant notices that her rent was being increased, first to $176 and then to $180 monthly.

The dispute which culminated in this litigation arose over Ms. Daniels' failure to pay a portion of the rent due for October 1980 and the entire rent due for November 1980. On November 16, 1980, Carl Johnson filed a complaint for possession of the apartment and for nonpayment of rent. Ms. Daniels answered the complaint alleging that the rent charged exceeded the maximum allowable rent under the Rental Housing Act of 1977 (D.C.Code § 45–1681 *et seq.* (1980 Supp.)), and that the lease was void because the landlord had violated District of Columbia housing regulations.[3] Ms. Daniels then counterclaimed for rents paid prior to the initiation of the suit, alleging overpayment of rent, breach of implied

---

**1.** During the pendency of this appeal, Fannie Daniels died and Gloria Gibson, one of her several children, was by order of this court substituted as appellant. Because of the result we reach, we find it unnecessary to consider any question of standing.

**1A.** This case arose before the court's decision in *Drayton v. Poretsky Management, Inc.,* 462 A.2d 1115 (D.C.1983). The parties did not raise the issue of primary jurisdiction either in the trial court or in this court, and thus we do not consider it.

**2.** D.C.Code § 45–902 (1973) establishes a tenant's right to a 30 days' notice to quit. However, D.C.Code § 45–908 (1973) provides that a tenant may waive that right.

**3.** Ms. Daniels raised other defenses, none of which are the subject of this appeal.

warranty of habitability and other violations of the housing regulations.

Trial was commenced in May 1981 and during its pendency Carl Johnson moved to amend his complaint to substitute Walter Johnson as plaintiff and to amend also the *ad damnum* clause to include the amount of the October rent which remained unpaid. The court granted the motion.

At the conclusion of the trial, the court made findings of fact, upon the basis of which it ruled as a matter of law that the subject premises were exempt from the rent ceiling limitations of the Rental Housing Act, that Walter Johnson was, as owner of the premises, the proper party-plaintiff in the action, and that Ms. Daniels had defaulted in her obligation to pay rent. The court, accordingly, entered judgment in favor of Walter Johnson for possession of the premises and for unpaid rent.[4] This appeal followed.[5]

### I. The Subject Premises are Exempt From the Rent Ceiling Limitations of the Rental Housing Act.

Appellant argues that the increase in her monthly rent from $109 in September of 1980 to $176 in October and $180 in November was in contravention of the Rental Housing Act. Appellant asserts that the property was not exempt from the rent ceiling limitations contained in § 45–1687[6] and that therefore the filing of a claim of exemption statement with the D.C.

Rental Accommodations Office by Walter Johnson on September 29, 1980, was ineffectual. We do not agree.[7]

Section 45–1686(a) exempts from rent control:

(4) any rental unit in any housing accommodation of four (4) or fewer units, including any aggregate of four (4) units whether within the same structure or not: Provided, that:

(A) such housing accommodation is owned by not more than four (4) natural persons;

(B) none of such owners has an interest either directly or indirectly, in any other rental unit in the District of Columbia; and

(C) the owner(s) of such housing accommodation shall file with the Rent Administrator a claim of exemption statement which shall consist of an oath or affirmation by such owner(s) of the valid claim to the exemption. The claim of exemption statement shall also contain the signatures of each person having an interest (direct or indirect) in the housing accommodation. Any change in the ownership of the exempted housing accommodation or change in the owner's interest in any other housing accommodation which would invalidate the exemption claim must be reported in writing to the

---

**4.** The court reduced the judgment to reflect the consequences of certain housing code violations.

**5.** We decline to address the merits of appellee's argument that this appeal is barred because on April 27, 1982, Fannie Daniels agreed to settle the case. On May 5, 1982, a motions division of this court denied appellee's request that the appeal be dismissed on the basis of the purported settlement agreement. Having carefully reviewed the record, we find no reason to disturb that decision.

**6.** Now codified, as amended, at D.C.Code § 45–1517 (1981).

**7.** We find persuasive on this issue the memorandum opinion and order of Judge Truman A. Morrison, III in *Walter Johnson v. James Hilli-*

*an,* L & T No. 90733–80 (Feb. 28, 1983). This was a case brought in the Landlord and Tenant Branch involving appellee and the same property as in the instant case. In a lengthy opinion, Judge Morrison concluded that, *inter alia,* the subject premises were exempt from the rent control provisions of the D.C. Rental Housing Act. In *Regina Brown v. Carl Johnson, Jr.,* T.P. 4921 (April 2, 1982), a case involving different parties but nearly identical circumstances, the Rental Accommodations Office determined that property owned by Carl Johnson, Jr. was exempt from rent control. Carl Johnson, Sr. conveyed the property to Carl Johnson, Jr. in much the same manner he conveyed the subject premises to appellee Walter Johnson.

Rent Administrator within thirty (30) days of such change.... [8]

Appellant maintains that Carl Johnson had either a direct or indirect interest in the rental property, but did not sign, as required, the exemption statement. The "interest" that appellant would have us recognize as controlling is Carl Johnson's obligation on a promissory note secured by a first deed of trust on the property and his continued management of the rental units.[9] These are not, however, indicia of the interest which § 45–1686(a)(4)(C) contemplates. Rather, that code section calls for full disclosure of those persons having any ownership interest in the property.[10] As manager of the property, Carl Johnson was no more than an agent of the owner Walter Johnson. Moreover, Carl Johnson's continued liability on the promissory note secured by a first deed of trust on the property was not tantamount to ownership. It evidenced merely an underlying monetary obligation which was personal in nature. *See Yasuna v. Miller*, 399 A.2d 68, 72 (D.C.1979).

■ Citing the legislative history of § 45–1686, appellant also argues that Carl Johnson is the "owner" of the subject premises, given a liberal definition of the term, and should not be able to evade rent control provisions by conveying the property to one who qualifies for the exemption.[11]

An examination of the record reveals that Carl Johnson may have had as one motive in conveying the property to his son the evasion of rent control.[12] And as appellant suggests, this result may not have been desired.[13] Yet, the statute is not ambiguous. It clearly exempts from rent control rental housing of four units or less which is *owned* by not more than four persons provided the owner(s) has no interest, either directly or indirectly, in any other rental property in the District of Columbia and provided a claim of exemption statement is properly filed with the Rental Accommodations Office. In our view, these criteria have been satisfied. Walter Johnson was the owner of record of the rental units involved at the time he filed the claim of exemption statement and at the time the rent increases were implemented.[14] The record quite clearly indicates that he had no other interests in District of Columbia rental property. Consequently, it would be contrary to the clear meaning of the statute to deny him the advantage of the exemption. *In re Estate of Shutack*, 469 A.2d 427, 429 (D.C.1983); *Davis v. United States*, 397 A.2d 951, 956 (D.C.1979). This court, of course, will not look beyond the plain meaning of a statute when the language is unambiguous and does not produce an absurd result. *Peoples Drug*

8. D.C.Code § 45–1686 (1980 Supp.), as amended, is now codified at D.C.Code § 45–1516 (1981 & Supp.1984).

9. Appellant also contends that Carl Johnson applied rental income from the property to payments on his promissory note. This is not evident from our examination of the record.

10. We reach this conclusion by reading the statute as a whole, *Carey v. Crane Service Co.*, 457 A.2d 1102, 1105 (D.C.1983), which clearly contemplates disclosure of ownership interests.

11. Carl Johnson would not have qualified for an exemption under § 45–1686 because, as the record indicates, he had ownership interests in other D.C. rental properties. Walter Johnson had no such interests.

12. But the record shows also that another motive for the conveyance was to avoid bankruptcy.

13. In a letter from Rental Accommodations Commission to Sterling Tucker, Chairman, City Council of the District of Columbia, dated April 22, 1976, the Commission stated that it was prepared to "adopt regulations to assure that persons do not qualify for this exemption by transfers of title for this purpose alone."

14. We are mindful of the District of Columbia Rental Housing Commission's decision in *Leonard Vogel & Company v. Hudley*, T.P. 4640 (August 16, 1983), in which it held that "[w]here [a] claim of exemption is based upon a transfer of property within a family ... [t]he proponent of the exemption must show that the transfer is real—that is, that more than bare title was transferred so that rent control could be avoided." *Id.* at 3. In the instant case, the testimony elicited at trial demonstrates that more than bare title was transferred from Carl Johnson to his son Walter.

*Stores v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983).

■ Having determined that Walter Johnson was the owner of the premises within the meaning of § 45–1686, it is necessary to address the contention that he, as a potential heir of his father Carl Johnson, had an indirect interest in other District of Columbia rental property and that consequently the subject premises did not qualify for the rent ceiling exemption. We find no merit to appellant's argument. It is axiomatic that a living person has no heirs. *In re Bartlett's Will*, 76 N.Y.S.2d 247, 254, *aff'd*, 274 A.D. 136, 80 N.Y.S.2d 375 (1948). As appellee suggests, among the many facts that appellant's argument presupposes is that Carl Johnson will predecease his son Walter. We decline to indulge in any such speculation.

Finally, appellant asserts that in violation of D.C.Code § 28–3101 (1981), Carl Johnson fraudulently conveyed the premises to his son Walter in an effort to evade the rent ceiling limitation and therefore retains an interest in the property, invalidating its exempt status. Appellee raises the issue of whether fraudulent conveyance was properly pleaded by appellant. Alternatively, appellee argues that the record does not support appellant's claim that the property was fraudulently conveyed by Carl Johnson to his son Walter.

■ Superior Court Landlord and Tenant Rule 5(c) requires that a defendant who desires to interpose a plea of title in defense to a suit for possession file such plea in writing under oath. Appellee maintains that appellant's claim that the premises were fraudulently conveyed by Carl Johnson is tantamount to a plea of title and that since none was filed, appellant cannot now avail herself of this defense. We are persuaded, however, that appellant was not required to file a plea of title under Rule 5(c) since she was not claiming title in herself or in another under whom she claimed. *Mindell v. Glenn*, 65 A.2d 340, 341–42 (D.C.1949). In any event, where, as here, there is no necessary and direct issue of title between the parties, appellant need not have complied with Rule 5(c). *Brown v. Young*, 364 A.2d 1171, 1173 n. 3 (D.C. 1976); *Mahoney v. Campbell*, 209 A.2d 791, 794 (D.C.1965); *Nickles v. Sullivan*, 83 A.2d 283, 284–85 (D.C.1951).

■ We cannot conclude, however, that Daniels was protected by § 28–3101, the fraudulent conveyance statute, which provides that "[a] conveyance or assignment ... of an estate or interest in land ... with the intent to hinder or defraud persons having just claims or demands, of their lawful suits, damages, or demands, is void as against the persons so hindered or defrauded." The statute does not indicate, nor does case law suggest, that a person in Ms. Daniels' position was protected. It is true, as appellant contends, that we may liberally construe this statute to suppress fraud in a proper case. *Leonardo v. Leonardo*, 102 U.S.App.D.C. 119, 122, 251 F.2d 22, 25 (1958).[15] But it is clear that § 28–3101 is designed to protect "creditors" from fraudulent conveyances or persons with similar concerns. *See Snider v. Kelly*, 77 U.S.App.D.C. 363, 364, 135 F.2d 817, 818, *cert. denied*, 320 U.S. 764, 64 S.Ct. 62, 88 L.Ed. 456 (1943).[16] Aside from her counterclaims, there is no showing in the record that Ms. Daniels had any "just claims or demands" against Carl Johnson as contemplated by D.C.Code § 28–3101 at the time he conveyed the premises to Walter.

## II. Counterclaims Were Properly Stricken From the Record

■ On January 23, 1981, Carl Johnson moved to amend his complaint to substitute his son Walter as the named plaintiff. The purported reason for the amendment was a

---

**15.** Construing D.C.Code § 12–401 (1951), the predecessor of § 28–3101.

**16.** Construing D.C.Code § 12–401 (1951). It is interesting to note that § 28–3101, the current statute, is captioned "Intent to defraud creditors."

misnomer on the face of the complaint. Counsel for Carl Johnson maintained that Walter was the owner of the premises and therefore the proper plaintiff. The court also entertained an oral motion by counsel to have Ms. Daniels' counterclaims against Carl Johnson stricken because he was not the proper party-plaintiff.[17] Ms. Daniels opposed the motion to strike the counterclaims. Although not specifically addressing the proper party issue, Ms. Daniels asserted that the counterclaims were permissible under Landlord and Tenant Rule 5(b).[18]

■ The court granted each motion. As its reason for striking the counterclaims, the court concluded that Ms. Daniels was seeking damages that had no relationship to the judgment requested by Carl Johnson. The colloquy between counsel for Ms. Daniels and the court suggests that the court was unwilling to permit counterclaims against the landlord for damages which had allegedly arisen prior to the period for which the landlord claimed unpaid rent.[19]

■ In *Hines v. John B. Sharkey Co., supra* note 19, this court interpreted Landlord and Tenant Rule 5(b) and held that a tenant may base a counterclaim under Rule 5(b) on housing code violations that predate the period for which the landlord claims rent is due. *Id.* at 1095. Thus, it was error for the motions court in the present case to strike Daniels' counterclaims for the reasons that the court stated. However, the result was correct. After striking the counterclaims, the court permitted the substitution of Walter Johnson as the named plaintiff. The counterclaims against Carl Johnson could not properly be heard in a suit brought by Walter Johnson, his successor in title.[20] *Brown, supra,* 364 A.2d at 1173 (possessory action is not a proper proceeding for resolving the rights of third parties). We hold, therefore that the counterclaims against Carl Johnson were properly stricken, albeit for the

---

17. In a supplemental brief submitted after argument, appellant maintains that the trial court erred when it considered the oral motion to strike Daniels' counterclaims. Citing *Battle v. Nash,* 470 A.2d 1252 (D.C.1983), appellant argues that the oral motion was prohibited by Super.Ct. L & T R. 13(a), which requires written motions for matters that can only be decided by looking beyond the record. We are not persuaded that Rule 13(a) is applicable. Where, as here, the facts necessary to rule on a motion can be ascertained with reasonable certainty from the record, an oral motion in the Landlord and Tenant Branch is permissible. *Battle, supra* at 1255.

18. Super.Ct. L & T R. 5(b) provides:

COUNTERCLAIMS. In actions in this branch for recovery of possession of property in which the basis of recovery is nonpayment of rent or in which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this branch. This exclusion shall be without prejudice to the prosecution of such claims in other branches of the court.

19. From our reading of the record, it is possible that the court based its decision to strike the counterclaims on the nature of the claims and not on when they arose. Ms. Daniels' counterclaims were of the type permitted by Landlord and Tenant Rule 5(b) and it would have been error for the court to conclude otherwise. Ms. Daniels alleged overpayments of rent, breach of implied warranty of habitability, and violations of housing regulations in her counterclaims. A counterclaim for breach of implied warranty of habitability is permissible under Super.Ct. L & T R. 5(b), *Hines v. John B. Sharkey Co.,* 449 A.2d 1092, 1093 n. 3 (D.C.1982), as is a counterclaim based on housing code violations. *See id.* Moreover, Rule 5(b) expressly permits a counterclaim for a money judgment based on the payment of rent. *Cf. Smith v. Interstate General Corporation,* 462 A.2d 1133, 1134 n. 2 (D.C.1983) (under Super.Ct. L & T R. 3, an answer which contained a claim that tenant owed landlord nothing more than what he had already paid him cannot be construed as a counterclaim). But, as discussed in text *infra,* this interpretation by the court does not warrant reversal.

20. Daniels did not amend her answer to include any counterclaims against Walter following his substitution as plaintiff. Moreover, Daniels was not precluded from filing an independent lawsuit against Carl in another branch of Superior Court.

wrong reason, and thus we do not reverse on that ground. *Marinopoliski v. Irish,* 445 A.2d 339, 340 (D.C.1982) (citing *Helvering v. Gowran,* 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937)); *Max Holtzman, Inc. v. K & T Co.,* 375 A.2d 510, 513 n. 6 (D.C.1977) (citing *Liberty Mutual Insurance Co. v. District of Columbia,* 316 A.2d 871, 875 (D.C.1974); *Wells v. Wynn,* 311 A.2d 829 n. 2 (D.C.1973)).

### III. Issue of Daniels' Waiver of Notice To Quit is Moot

■ The final issue on appeal is whether Walter Johnson could enforce a clause in the Daniels' lease which purported to waive her right to notice to quit the premises. Appellant assigns as error the trial court's conclusion that the waiver was enforceable by appellee as Carl Johnson's assignee and grantee. Specifically, appellant contends that appellee failed to prove at trial that the lease was assigned prior to the initiation of this suit. Appellant also contends that the covenant in the Daniels' lease waiving her right to notice to quit was personal as to the convenanting parties, Ms. Daniels and Carl Johnson, and that it was therefore unenforceable by appellee.

Although this issue poses interesting questions, we are convinced that it is moot. The relief that appellant seeks relates to the money judgment awarded by the trial court and not to possession of the premises.[21] Consequently, the issues that we have addressed, relating to Ms. Daniels' counterclaims and her level of rent, are properly before this court. However, a conclusion that appellant did not waive her right to notice to quit would not open the door to an additional remedy. *See Gaddis v. Dixie Realty Company,* 248 A.2d 820, 822 (D.C.1969) (discussing the concept of mootness), *remanded on other grounds,* 136 U.S.App.D.C. 403, 420 F.2d 245 (1969).

**21.** Upon Daniels' death, this court ordered appellant to show cause why this appeal should not be dismissed as moot. On February 3, 1984, this court denied appellee's motion to dismiss the appeal as moot without explanation. Having now addressed those issues which concern

Moreover, in *Clay v. Green,* 404 A.2d 959 (D.C.1979), this court determined moot the question of whether a tenant had waived her right to notice to quit where the tenant had vacated the premises. We remanded that case for a determination of rent due. In the case at bar, the tenant is no longer living and the issue of rent has been resolved.

*Affirmed.*

the money judgment awarded by the trial court, there is no need to address issues related solely to possession. At oral argument, counsel for appellant conceded that the issue of possession is moot.