**CAMBRIDGE MANAGEMENT COMPANY, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

**Unita Atkinson, Intervenor.**

**No. 84–1415.**

District of Columbia Court of Appeals.

Argued June 5, 1986.
Decided Oct. 3, 1986.

Richard W. Luchs, Washington, D.C., for petitioner.

Karen S. Dworkin, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the memorandum in lieu of brief, for respondent.

John K. Lunsford, Washington, D.C., for intervenor.

Before NEBEKER, MACK and NEWMAN, Associate Judges.

NEWMAN, Associate Judge:

Cambridge Management Company (CMC) petitions for review of the Rental Housing Commission's decision that its property is not exempt from the Rent Control Act. D.C.Code § 45–1501 et seq. (1981).[1] CMC argues that its principals only owned four rental units each and did not have any interest in any other rental unit within the meaning of D.C.Code § 45–1516(a)(3).[2] We agree, reverse and remand.

On May 1, 1980, Anthony and Cecilia Wysocki (husband and wife), Joseph Wysocki, Richard Ressa, and Leon Penman purchased three buildings and lots at 4000, 4004 and 4008 8th Street, N.E. Each building contains four rental units. The purchasers paid for the buildings partly in cash, partly by assuming a loan secured by a deed of trust on the properties, and partly by a note secured by a second deed of trust on all the properties. The purchasers took title to the three properties as tenants in common.

On May 20, 1983, the five purchasers executed quit claim deeds in order to divide up the properties. Richard Ressa took title to the 4004 8th Street property; Joseph Wysocki and Leo Penman took title to the 4000 8th Street property, and Cecilia and Anthony Wysocki took title to lease 4008 8th Street property. All the purchasers retained their liabilities on the two deeds of trust.

After the initial purchase, but before the execution of the quit claim deeds, Richard Ressa and Joseph Wysocki formed the Cambridge Management Company for the purpose of managing the three properties. After the quit claim deeds were signed, CMC continued to manage the properties and Ressa frequently wrote single checks

1. D.C.Code § 45–1501 expired on April 30, 1985, and was replaced by the Rent Control Act of 1985, D.C.Code § 45–2501 et seq. (1981) (effective date July 17, 1985).

2. D.C.Code § 45–1516(a)(3) provides an exemption for

Any rental unit in any housing accommodation of 4 or fewer units, including any aggre-gate of 4 units whether within the same structure or not: Provided that: (A) Such housing accommodations is owned by not more than 4 natural persons; [and] (B) none of such owners has an interest, either directly or indirectly, in any other rental unit in the District of Columbia....

to cover work done on all three properties. Immediately following the signing of the quit claim deeds, CMC notified Unita Atkinson, a tenant of 4004 8th Street, that her rent was being increased from $163.00 per month to $300.00 per month.

Atkinson then filed a complaint with the D.C. Rental Accommodations Office. After a hearing January 10, 1984, Hearing Examiner Word concluded that each of the original purchasers, including Ressa, had at least an indirect interest in the other buildings and therefore none were exempt from rent control. Based on this finding the Examiner also found that CMC violated the Atkinson's rent ceiling when it demanded the higher, illegal rent. He found that this violation was knowing and willful because "[i]t is clear that Respondents engaged in a scheme to evade the rent control laws in the District of Columbia." Accordingly, Atkinson was awarded treble damages.

The Rental Housing Commission affirmed this decision. In doing so, the Commission gave a broad interpretation to D.C. Code § 45–1516(a)(3) which provides that an owner is not exempt from rent control if she or he owns or has an indirect interest in more than four rental units. The Commission construed direct interest as the equivalent of legal ownership. Indirect interest, however, was defined as "something less than direct interest and ownership" and encompassed situations where

> one has interest in the management of the property, the establishment of rents and the collection of rents. Where one continues as the co-obligor on notes securing the purchase of the properties he certainly has exposure in the event of default. This would indicate interest in the management of the property and the collection of rents.

[Order at 2]. Since each of the original purchasers had a "benefit/liability in the establishment and collection of rent in all three properties, they retained an indirect interest after the alleged 'division' " of the properties in 1983. *Id.* This petition for review followed.[3]

■ This court owes deference to an agency's interpretation of its own statute and regulations. *See Remin v. District of Columbia Rental Housing Commission,* 471 A.2d 275, 279 (D.C.1984). We must uphold an agency's interpretation of its own statute unless it is plainly erroneous or inconsistent with the regulation or statute being administered. However, an agency is also bound by its own regulations interpreting the statute it is authorized to administer. *See Dankman v. District of Columbia Board of Elections and Ethics,* 443 A.2d 507, 513 (D.C.1981) (en banc). Exemptions from rent control laws should be narrowly construed in light of the intent of the legislature and plain meaning of the legislation. *See Bernstein v. Lime,* 91 A.2d 841, 843 (D.C.Mun.App.1952).

■ The Rental Housing Commission's decision is wrong for two reasons. First, the Commission's conclusions that an indirect interest is created by the management of the other properties, the establishment and collection of those rents, and a continuing obligation to pay the encumbrances on those properties, is wrong as a matter of law. In order to constitute an "indirect interest" some form of ownership interest, however indirect, must exist. *See Gibson v. Johnson,* 492 A.2d 574, 577 (D.C. 1985). *See also Remin v. District of Columbia Rental Housing Commission, supra,* 471 A.2d at 279. In *Gibson,* we held that the mere obligation on a deed of trust and the management of rental units was not tantamount to any form of ownership interest. "As manager of the property, Carl Johnson was no more than agent of the owner Walter Johnson." *Id.* at 577. Moreover, Carl Johnson's liability on the first deed of trust on Walter Johnson's

---

**3.** Unita Atkinson was permitted to intervene.

property evidenced "merely an underlying monetary obligation which was personal in nature." *Id.* (citation omitted); *see also White v. Rosenthal,* 140 Cal.App. 184, 35 P.2d 154 (1934). In *Remin,* we found that Morris Remin's dower interest in his wife's properties was an indirect ownership interest. *See* D.C.Code § 19–102 (1981). Therefore, his three condominium units combined with his wife's two units in the same building brought him within the ambit of D.C. Code § 45–1516. In light of our holdings in *Gibson* and *Remin,* the Commission's interpretation of the term "indirect interest" cannot stand.

■ Second, the Commission ignored its own regulations when it found that "indirect interest" meant "something less than ... ownership." Order at 2. Regulation 3407.8 provides:

> In determining whether or not rental units are exempt from coverage under D.C.Code § 45–1516(a)(3), the following criteria shall apply:
>
> (c) Any individual who has an *ownership interest, direct or indirect,* in five (5) or more rental units, whether in the same structure or in different structures, is subject to the Act as are all the units in which the individual has an interest.

30 D.C.Reg. 6220 (1983) (emphasis added). In this regulation, the Commission has already defined the term "indirect interest" to mean an indirect *ownership.* Because the Commission's own regulations give the term "indirect interest" a narrow construction the Commission is not free to disregard it and give this term the broader construction it did here. *See Dankman v. District of Columbia Board of Elections and Ethics, supra,* 443 A.2d at 513 ("a validly promulgated regulation ... is binding upon the Board ... [and] has the force and effect of law" (citations omitted)).

We reverse and remand this case for further proceedings not inconsistent with this opinion.