Helene REICHMAN et al., Appellants,

v.

FRANKLIN SIMON CORPORATION, Appellee.

No. 11806.

District of Columbia Court of Appeals.

Argued May 9, 1978.

Decided Sept. 21, 1978.

---

David E. Schreiber, Washington, D. C., for appellants.

Thomas Pace, Washington, D. C., for appellee.

Before KERN, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal from an order granting summary judgment to appellee. Appellants are Helene Reichman and her husband, Walter. Involved is a suit for damages which arose when, on the morning of January 5, 1971, Helene Reichman slipped and fell on the icy, public sidewalk in front of appellee's store. Helene Reichman sustained a fracture of her right hip, which occasioned a series of operations and ultimately required a total hip replacement.

The procedural history of this case may be summarized as follows. The Reichmans originally filed suit in United States District Court against appellee and its code-

fendant, the District of Columbia, on November 27, 1972. On June 29, 1973, United States District Court Judge John Pratt granted summary judgment to appellee with respect to appellants' claim, and noting that neither federal jurisdiction nor more than $50,000 was involved, certified the matter to Superior Court, pursuant to D.C.Code 1973, § 11–922(b).[1]

On July 30, 1974, the Superior Court, per Judge Braman, issued an order granting appellee summary judgment on a cross-claim brought by the District of Columbia, but refused to enter final judgment on either this order or the District Court order of June 29, 1973, because appellants' action against the District of Columbia remained pending.[2]

On November 3, 1976, appellants and the District of Columbia reached a settlement. A praecipe was filed dismissing the case with prejudice against the District of Columbia. This finalized the case with respect to the summary judgment orders entered previously, and matured appellants' right to appeal. On December 3, 1976, timely appeal was noted, but from the wrong order, i. e., the July 30, 1974 order of Judge Braman. On December 13, 1976, an amended notice of appeal was filed, correctly, from the District Court order of June 29, 1973 granting appellee summary judgment against appellants.[3]

On October 11, 1977, this court ordered appellants to show cause why this appeal should not be dismissed for lack of jurisdiction. On December 7, 1977, we ordered that this jurisdictional matter be referred to the motions division, and on March 29, 1978, subsequent to the filing of briefs, we amended the December 7 order to refer the jurisdictional question to the merits division. We conclude that we have jurisdiction to consider this appeal, and we affirm the summary judgment order entered in appellee's favor.

I

The jurisdictional question, one of first impression, is whether, in a case in which the District Court has entered an interlocutory order, subsequent transfer of the case under D.C.Code 1973, § 11–922(b) empowers the Superior Court to treat the order as its own, and empowers this court to review the

---

1. D.C.Code 1973, § 11–922(b) states:

    In a civil action begun in the United States District Court for the District of Columbia during the thirty-month period beginning on the effective date of the District of Columbia Court Reorganization Act of 1970, the court may certify the action to the Superior Court if it appears to the satisfaction of the United States District Court at or subsequent to any pretrial hearing, but before the trial thereof, that—
    (1) the action will not justify a judgment in excess of $50,000; and
    (2) the action does not otherwise invoke the jurisdiction of the court.
    Section 11–922(c) provides:
    When an action is transferred under this section, the pleadings in the action, together with a copy of the docket entries . . . shall be sent to the Superior Court. The Superior Court shall thereafter treat the case as though it had been filed originally in that court . . . . .

2. Super.Ct.Civ.R. 54(b), in pertinent part, states:

    [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more . . . only upon an express determination that there is no just reason for delay . . . . .

3. We will treat the amended notice as relating back to the notice of December 3, and thus timely. We find authority for this in *Diatz v. Washington Technical School,* D.C.Mun.App., 73 A.2d 227, 228 (1950), *aff'd, Sobel v. Diatz,* 88 U.S.App.D.C. 329, 189 F.2d 26 (1951). There, appellee moved to dismiss because the notice of appeal erroneously stated that appeal was taken from an order denying a motion for rehearing, which was not an appealable order. We observed that the notice should have specified that appeal was being taken from the order granting judgment rather than the order of denying rehearing. We concluded, however, that "it is obvious that the appeal was intended to be from the order granting judgment" and we treated the notice as timely. In the instant case, appellants' intention was similarly obvious. Having become entitled, they sought appellate review of the order granting appellee summary judgment against them. Their error, in noting appeal from Judge Braman's order instead of Judge Pratt's, was likely prompted by legitimate confusion attending their right to appeal to this court from a District Court order, a question which we will address, *infra.*

order on appeal. Stated another way, was enactment of § 11–922(b) indicative of Congress' intention that when a case is transferred under that section, all previous acts of the District Court shall be regarded in effect as having been acts of the Superior Court? An affirmative answer is a possible interpretation; another is that § 11–922(b) contemplates transfer of the entire case at its inception only, and does not permit the Superior Court to finalize District Court interlocutory orders entered prior to transfer. The former interpretation would confer jurisdiction upon us in this case. The latter would mandate that, transfer notwithstanding, the instant summary judgment order can be finalized only by the District Court, and can be appealed only to the United States Court of Appeals for the District of Columbia Circuit. Although the language of § 11–922(b) provides no answer, and there is no legislative history bearing directly on that particular provision, the overriding Congressional concern attending enactment of court reorganization in the District of Columbia compels us to conclude that we have jurisdiction.

Underlying the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358; D.C.Code 1973, § 11–101 *et seq.,* was Congress' wish to delineate the functions of the federal and local court systems in the District of Columbia. The federal courts were to be relieved of long-standing local responsibilities and were to become courts of limited jurisdiction, as are federal courts elsewhere.[4] The local courts were to be given powers analogous to those of state courts, with the District of Columbia Court of Appeals constituted as the final judicial authority in the jurisdiction on matters of local law.[5] Motivating this new arrangement was a desire to streamline jurisprudence in the District of Columbia; to eliminate the duplication of effort promoted by two separate court systems of often overlapping jurisdiction.[6] Indeed, in the instant case, had appellants' suit against the District of Columbia gone to trial in Superior Court, and were we to hold we are without jurisdiction here, mandating that this case return to District Court, we would foster the situation which Congress manifestly sought to eliminate, *i. e.,* suits in two court systems arising out of the same transaction.

D.C.Code 1973, § 11–921 gives the Superior Court plenary jurisdiction over civil matters brought in the District of Columbia,[7]

---

4. *See Palmore v. United States,* 411 U.S. 389, 408–09, 93 S.Ct. 1670, 1682, 36 L.Ed.2d 342 (1973):

   The remedy in part, was to relieve the regular Article III courts, that is, the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit, from the smothering responsibility for the great mass of litigation, civil and criminal, that inevitably characterizes the court system in a major city and to confine the work of those courts to that which, for the most part, they were designed to do, namely, to try cases arising under the Constitution and the nationally applicable laws of Congress.

   *See also* Hearing on S. 2601 Before the Senate Committee on the District of Columbia, 91st Cong., 2d Sess., pt. 3, at 1139 (statement of Attorney General John N. Mitchell, July 11, 1969); Williams, *District of Columbia Court Reorganization, 1970,* 59 Geo.L.J. 477, 484, 533 (1971).

5. D.C.Code 1973, § 11–102. *See Key v. Doyle,* 434 U.S. 59, 64, 98 S.Ct. 280, 54 L.Ed. 238 (1977), *quoting* H.R.Rep. No. 91–907, p. 35 (1970): The aim of the act was to establish "a Federal-State court system in the District of Columbia analogous to court systems in the several States." *See also Palmore v. United States, supra* 411 U.S. at 409, 93 S.Ct. 1670; Hearings Before Subcomms. Nos. 1 and 3 of the House Comm. on the District of Columbia, 91st Cong., 1st & 2d Sess. at 12 (statement of Associate Deputy Attorney General Donald E. Santarelli, Sept. 22, 1969); Williams, *supra,* 59 Geo.L.J. at 490.

6. Hearings on S. 2601 Before the Senate Committee on the District of Columbia, 91st Cong., 2d Sess., pt. 3, at 1307–08 (statement of Theodore R. Newman, Jr., Republican Committee of the District of Columbia, Aug. 7, 1969).

7. Section 11–921(a)(6) provides:

   Immediately following the expiration of the thirty-month period beginning on [the effective date of court reorganization], the [Superior] court has jurisdiction [regardless of the amount in controversy] of any civil action or other matter, at law or in equity, brought in the District of Columbia.

and correspondingly limits the civil jurisdiction of the District Court to those special matters of which District Courts nationwide may take cognizance. In the immediate aftermath of court reorganization, Congress anticipated the need to transfer to the newly empowered Superior Court certain cases which had been brought in District Court prior to the effective date of the Act,[8] or which would be brought in District Court in the 30 months during which § 11–921(a)(6) remained inchoate. *See* note 7, *supra.* We think § 11–922(b) was drafted to respond to this transitional need. Because the statute dealt only with transfer of suits brought in District Court in the two and one-half years following the effective date of court reorganization, its impact was necessarily to be short-lived, and conceivably, this will be the only appeal to address this jurisdictional question.

Consistent with the overall scheme of court reorganization, we conclude that Congress intended that cases transferred under § 11–922(b) be treated as if they had been brought initially in Superior Court.

Our conclusion is bolstered by analogy to cases which have interpreted 28 U.S.C. § 1441 (1970), the federal removal statute. These decisions have recognized that when a case is removed from a state to a federal court "the federal court takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter,* 324 F.2d 783, 785 (9th Cir. 1963). *See also Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local 70,* 415 U.S. 423, 94 S.Ct.

1113, 39 L.Ed.2d 435 (1974); *Hill v. United States Fidelity & Guaranty Co.,* 428 F.2d 112 (5th Cir. 1970), *cert. denied,* 400 U.S. 1008, 91 S.Ct. 564, 27 L.Ed. 621 (1971); *Savell v. Southern Railway Co.,* 93 F.2d 377 (5th Cir. 1937); 1A Moore's Federal Practice ¶ 157 [10.–2] ("a federal court may reconsider interlocutory orders made by the state court prior to removal").

Significant too is the interpretation which has been placed on the word *action* as used by Congress in 28 U.S.C. § 1441 (1970). *Action,* in the context of removal, does not refer only to a case prior to rulings and interlocutory orders, but refers to a case in any posture prior to disposition. We think it reasonable to infer that Congress intended *action* as used in § 11–922(b) to mean the same thing, and to permit transfer to Superior Court of this case in its interlocutory posture. The Superior Court was empowered to finalize the summary judgment order, and we have jurisdiction to review it.

## II

Appellants contend that the trial court erred in granting appellee's motion for summary judgment. They maintain that appellee was responsible for clearing the sidewalk abutting its store, and predicate liability on appellee's failure to remove the ice on which appellant Helene Reichman ultimately slipped. District of Columbia law unquestionably requires a property owner to clear abutting sidewalks.[9] However, a real property owner is under no duty to keep the sidewalk abutting its property clear of snow and ice for the benefit of

---

**8.** Section 11–922(a) provides:

In a civil action begun in the United States District Court for the District of Columbia before the effective date of the District of Columbia Court Reorganization Act of 1970 [other than an action for equitable relief], where it appears to the satisfaction of the court at or subsequent to any pretrial hearing but before trial thereof that the action will not justify a judgment in excess of $10,000 and does not otherwise invoke the jurisdiction of the court, the court may certify the action to the Superior Court for trial.

**9.** D.C.Code 1973, § 7–801 provides:

It shall be the duty of every person, partnership, corporation, joint-stock company, or syndicate in charge or control of any building or lot of land within the fire limits of the District of Columbia, fronting or abutting on a paved sidewalk, whether as owner, tenant, occupant, lessee, or otherwise, within the first eight hours of daylight after the ceasing to fall of any snow or sleet, to remove and clear away, or cause to be removed and cleared away, such snow or sleet from so much of said sidewalk as is in front of or abuts on said building or lot of land.

pedestrians, except as to invitees, a status which appellant Helene Reichman does not claim. *Robinson v. Park Central Apartments,* 248 F.Supp. 632, 634 (D.D.C.1965). *See Radinsky v. Ellis,* 83 U.S.App.D.C. 172, 173, 167 F.2d 745, 746 (1948).

This rule of nonliability is based on the fact that pedestrians are not the class which the law purports to protect. The snow removal law was "an attempt on the part of the municipality to shift to the shoulders of individual citizens the burden which it is primarily incumbent on itself to bear." *Radinsky v. Ellis, supra* at 173, 167 F.2d at 746.[10]

There is one exception to this rule. It has been held that a real property owner may be found liable if it acts in any manner to increase the hazard created by snow or ice accumulated on an abutting public sidewalk and such action proximately causes plaintiff's injury. *Hecht Co. v. Hohensee,* 65 App.D.C. 328, 329, 83 F.2d 585, 586 (1936). Appellants assert here, as they did in their opposition to the summary judgment motion, that a genuine issue of material fact exists with respect to whether appellee acted to increase the danger that appellant Helene Reichman would fall on the ice on the sidewalk in front of appellee's store.

Appellee replies that appellants presented no evidence that appellee affirmatively undertook any action with regard to the public sidewalk abutting its store. Appellants' complaint alleged negligence by appellee in the maintenance of the sidewalk. Appellee's answer denied this. Appellants assert that this, without more, created a genuine issue of fact. They maintain, alternatively, that the trial court improperly cast upon them the ultimate burden of establishing the existence of an issue of material fact.

■ The trial court properly placed this burden on appellants. When a motion for summary judgment has been made the

moving party must first establish that there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Willis v. Cheek,* D.C.App., 387 A.2d 716, 719 (1978). Once this showing has been made the burden shifts to the nonmoving party to prove the existence of an issue of material fact. Summary judgment is appropriate when there is no genuine dispositive issue of material fact and the moving party is entitled to judgment as a matter of law. *Yates v. District Credit Clothing,* D.C.App., 241 A.2d 596, 598 (1968). Appellee carried its burden when it established that there was no evidence that it took any action with regard to the public sidewalk. Thus the burden shifted to appellants to prove that, indeed, appellee had interfered with the sidewalk. In reviewing a trial court's entry of summary judgment, we must determine

> whether the trial court properly concluded that appellant did not meet his burden of setting forth specific facts demonstrating a genuine issue for trial, and, if appellant did not, whether the trial court correctly applied [the law] to the undisputed facts. [*Hill v. District of Columbia,* D.C.App., 345 A.2d 867, 869 (1975).]

In reviewing the trial court's order, we are limited to facts in the record. *Kron v. Young & Simon, Inc.,* D.C.App., 265 A.2d 293, 295 (1970). The instant record admits of no specific facts militating against summary judgment. In granting summary judgment, the trial court observed, "[t]hen, on the state of the record, we have the deposition of one of the plaintiffs, attached to which is a photograph, indicating that the accident happened on the public pavement, isn't that correct?" Appellants did not contend then that there was more to the record or that the record demonstrated affirmative conduct on the part of appellee with regard to the sidewalk, and we reject the contention now.

---

**10.** Appellants ask that we depart from well-settled precedent and rule that a real property owner's failure to clear an abutting sidewalk is negligence *per se,* which will support recovery by pedestrians for resultant injuries. Such a

departure from precedent which is binding on this panel would require en banc consideration by this court. *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

Appellants assert finally that the summary judgment order was premature; that additional discovery would have uncovered specific facts necessary to create a genuine issue and thus to defeat the motion. Appellee was instructed in April 1973 to produce, on May 15, 1973, any person having knowledge of snow removal activities in front of appellee's store at the time in question. Appellee was able to produce only one such individual, whom appellants elected not to depose. On May 16, 1973, all parties entered into a stipulation that all discovery, except a physical examination of appellant Helene Reichman, was to be terminated by May 21, 1973. At the hearing on appellee's summary judgment motion, counsel for the District of Columbia asserted, without challenge, that "we have no expectancy or hope of ever showing what Franklin Simon did or did not do." Under these circumstances, we find no basis to agree with appellants' contention that the trial court erred in granting summary judgment, or that additional discovery would have been fruitful. The order granting summary judgment is

*Affirmed.*