Basil F. WEAKLEY, Jr., Appellant,

v.

BURNHAM CORPORATION,
et al., Appellees.

No. 03–CV–710.

District of Columbia Court of Appeals.

Argued Oct. 7, 2004.

Decided April 14, 2005.

Peter T. Enslein, Dallas, TX, with whom Patrick S. Guilfoyle was on the brief, for appellant.

R. Thomas Radcliffe, Jr., and Steven J. Parrott filed the brief for appellee Burnham Corporation.

Robin Silver, with whom Laura A. Cellucci and Michelle Noorani were on the brief, for appellee Cleaver Brooks.

Laura N. Steel, Washington, with whom David A. Seltzer was on the brief, for appellee Oakfabco, Inc.

Thomas P. Bernier filed the brief for appellee The Marley Company.

Scott H. Phillips for appellee Foster Wheeler, L.L.C.

Before SCHWELB, REID and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

Basil F. Weakley, Jr., was employed as a boiler service worker in the Washington, D.C., metropolitan area from approximately 1964 to 1979. He contracted asbestosis many years later. Weakley brought this action for negligence, failure to warn, and strict liability against eight boiler manufacturers, alleging that the manufacturers were legally responsible for his asbestosis and were therefore liable to him in damages. In three separate orders, the Superior Court granted summary judgment in favor of the manufacturers, concluding principally that Weakley had presented insufficient evidence of causation.

Weakley has appealed from the judgments in favor of five of the manufacturers: Burnham Corporation, Cleaver Brooks, Foster Wheeler, L.L.C., The Marley Company, and Oakfabco, Inc. Weakley contends that summary judgment was improper because, (1) in his answers to interrogatories and attachments thereto, in his deposition, and in a subsequent affidavit, he presented proof that "[he] and [each of] the defendants' [asbestos-containing] products were in the same place at the same time," as required by our decision in *Claytor v. Owens–Corning Fiberglas Corp.*, 662 A.2d 1374, 1384–85 (D.C.1995); and (2) Weakley's expert witness, M. Anthony Casolaro, M.D., a pulmonologist, stated in his affidavit, to a reasonable degree of medical certainty, that as a result of Weakley's

regular exposure to asbestos while working on boilers, he developed asbestosis, and that "each and every exposure to asbestos from boilers containing, or covered with, asbestos materials was a significant causative factor in the development of asbestosis in Mr. Weakley." We agree with Weakley that summary judgment should not have been granted.

Weakley also appeals from orders of the Superior Court, issued without opinion, granting the motions of defendants Burnham and Foster Wheeler to preclude Weakley from taking the depositions of corporate designees of these defendants pursuant to Super. Ct. Civ. R. 30(b)(6). By means of these depositions, Weakley had sought to ascertain, *inter alia*, whether any of the companies' boilers had been installed in the Washington, D.C., metropolitan area, and the identities of any boilers (or of other products containing asbestos) which these defendants may have sold to Weakley's principal employers during the period that Weakley serviced boilers. We conclude that the dispute over these protective orders should be resolved in conformity with *Covington v. Abex Corp.,* 1990 WL 204688, 1990 U.S. Dist. LEXIS 16197 (D.D.C.1990):

> [B]efore [defendants] need furnish information that may be relevant to the instant litigation, [Weakley] must provide [defendants] with a list of the places where [Weakley] worked, the companies with whom [Weakley] was employed, and the duration of [Weakley's] employment with those companies in the years that he was allegedly exposed to [the defendant's] products.

Weakley has represented under oath that he has frequently worked with Burnham and Foster Wheeler boilers and has regularly been exposed to asbestos in do-

ing so. Given the decades that have elapsed between his alleged encounters with these defendants' products and his contraction of asbestosis, we conclude that to demand more from Weakley before permitting him to conduct even limited discovery would place on Weakley, and on most plaintiffs in similar circumstances, an all-but unsustainable burden, for a plaintiff cannot reasonably be expected to recall, decades later, exactly where and when he encountered a particular manufacturer's product.

## I.

## FACTUAL BACKGROUND

Weakley began his career servicing boilers in 1964, and for the next two years he worked principally for Fairfax County Public Schools. Subsequently, he was employed by Allen Mitchell & Co. and by Capital Boiler Works. Weakley alleges that the components of boilers on which he worked, *e.g.,* insulation on pipes, fire-retardant bricks, and gaskets, contained asbestos, and that he was frequently exposed to asbestos dust. According to Weakley, there were no warning labels on any of the boilers which he serviced, and neither the manufacturers nor his employers apprised him of the dangers of working with asbestos. As a result, Weakley never wore respiratory protection, nor was he advised to do so by anyone.

Weakley filed this action on January 24, 2002, more than thirty-seven years after he began servicing boilers, and more than twenty-three years after he discontinued working with them. It is a matter of common knowledge that asbestosis takes a great many years to develop.[1] At the time he was working with boilers, Weakley had

---

1. "... [T]he asbestosis disease process, can take years of exposure to produce the dis-

ease." *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1162 (4th Cir.1986).

no reason or incentive to record the names of manufacturers, or any other identifying information, for he had no idea that, decades later, he would become ill as a result of his exposure to asbestos products. Thus, although it is undisputed that Weakley developed asbestosis, and although he has presented expert testimony that working on boilers exposed him to this disease, Weakley must now attempt to reconstruct, so far as he can, whose boilers he was servicing, where he was doing so, and with whom, all well over a quarter of a century ago. These realities provide the ever-present context of Weakley's appeal, and we cannot be blind to them as we consider both the propriety of summary judgment and the level of information that Weakley should be required to produce before being permitted to conduct any discovery and, specifically, before having the opportunity to take even limited Rule 30(b)(6) corporate designee depositions.

Shortly after the complaint (later amended) was filed, the defendants propounded interrogatories to Weakley and noticed the taking of his deposition. After responding to these interrogatories, Weakley appended his answers in a seven-page chart captioned "Work History of Basil Weakley, Jr." Weakley stated that he "worked with and around boilers laden with asbestos-containing pipe insulation manufactured by ... Burnham Corporation, Cleaver Brooks Boilers, Foster Wheeler Corporation, [Oakfabco], ... and [Marley]," i.e., the five appellees in this case. As to some of his alleged exposures to asbestos, Weakley was able to include in his Work History

1. the approximate time of the claimed exposure;

2. the identity of his employer at the time;

3. the jobsite at which the boiler was allegedly serviced;

4. the identity of the manufacturer of the boiler (or, if this information was unknown to Weakley, the specific type of asbestos-containing component encountered by Weakley at the site); and

5. the name of a coworker.

Weakley was, however, unaware of the identities of the manufacturers of some of the boilers with which he came into contact. In some instances, Weakley remembered working with a particular brand of boiler but did not recall where and when this occurred.

In October and November 2002, following the close of discovery on October 5, the defendants filed motions for summary judgment. All of the defendants contended, *inter alia*, that Weakley had failed to show that their conduct had caused any injury to Weakley. The defendants asserted that no genuine issue of material fact had been presented by Weakley, and that they were entitled to judgment as a matter of law.

Weakley, however, supplemented his answers to interrogatories after the defendants had filed their motions. Weakley issued subpoenas to Fairfax County Schools, where he worked from 1964–65, and to L'Enfant Plaza, where he worked while employed by Allen Mitchell in the late 1960s and early 1970s. Based on the responses to these subpoenas, Weakley was able, on November 1, 2002, to file a Revised Work History, which contained considerably more detail regarding his contacts with some of the defendants' products.[2] In the Revised Work History,

---

2. Briefly, Weakley specified that he had worked with Oakfabco's boilers at the Fairfax County Schools in 1964–65. He stated that

while he was employed by Allen Mitchell he had serviced a Burnham boiler in or around the early 1970s at L'Enfant Plaza. He stated

Weakley identified numerous projects and boilers with which he had been involved during his career. Finally, on December 9, 2002, as a supplement to his opposition to the defendants' motions for summary judgment, Weakley filed a detailed affidavit, summarizing his contacts with the defendants' products.[3]

Beginning with his initial Work History, Weakley represented under oath that he had come into contact with boilers manufactured by each of the moving defendants. In his subsequent affidavit, Weakley reiterated that "[a]mong the asbestos-containing boilers that I frequently serviced and which caused me to be exposed regularly to significant amounts of asbestos dust in the manner described above were those manufactured by Burnham Corporation, Cleaver Brooks Boilers, Foster Wheeler Corporation, [Oakfabco], ... and [Marley]." In other words, Weakley represented not only that he was in the same immediate area as the defendants' asbestos-containing products, but that he frequently worked on them as well.

In further support of his opposition to the summary judgment motions, Weakley filed the affidavit of an expert pulmonologist, M. Anthony Casolaro, M.D. In his affidavit, Dr. Casolaro explained that "no level of exposure [to asbestos] has been demonstrated below which asbestos-induced cancers will not occur...." Dr. Casolaro went on to conclude:

It is my opinion, to a reasonable degree of medical certainty: (1) that from in or about 1965 to 1978 (the period in which Mr. Weakley was employed as a boiler worker) Mr. Weakley was exposed to significant amounts of asbestos fiber on a regular basis; (2) that as a direct result of this asbestos exposure, Mr. Weakley developed asbestosis[;] and (3) that *each and every exposure to asbestos from boilers containing, or covered with, asbestos materials was a significant causative factor in the development of asbestosis in Mr. Weakley.*

(Emphasis added.)

In three brief written orders, the trial judge (Dixon, J.) granted the defendants' motions for summary judgment, primarily because, in the judge's view, Weakley's claimed exposure to the defendants' boilers was not sufficiently extensive or regular. With respect to Burnham, for example, the judge reasoned that "the plaintiff does not say with any specificity when, how often or how long he worked at L'Enfant Plaza," where Weakley encountered a Burnham boiler, and that therefore "the plaintiff has not satisfied his burden of identifying Burnham as a substantial cause of his injury." The judge so ruled without mentioning either Dr. Casolaro's affidavit in this case or our decision in *Alliegro v. ACandS, Inc.,* 691 A.2d 102 (D.C.1997), in which this court relied heavily on medical evidence very similar to Dr. Casolaro's and reversed a directed verdict in favor of the manufacturer.[4] The judge's reasoning in

---

that in his work at the Fairfax County Schools, "to the best of my knowledge Cleaver Brooks stands out a lot." Weakley was unable to specify where or when he had worked with boilers manufactured by Foster Wheeler or Marley.

**3.** The defendants also took Weakley's deposition. With the exception of Cleaver Brooks, counsel for the defendants posed no questions to Weakley regarding his exposure to their

products, and Weakley was not required to volunteer the information.

**4.** In *Alliegro,* the plaintiff's expert, Dr. David Albert Schwartz testified in pertinent part as follows:

My opinion is that every exposure contributed substantially to the development of [Mr. Alliegro's] pulmonary fibrosis, and contributed to the progression of his asbestosis.... Each and every dose contributes

granting summary judgment in favor of the other defendants was consistent with the foregoing general analysis.

## II.

### SUMMARY JUDGMENT

A. *The summary judgment standard.*

The legal standard governing appeals from an order granting summary judgment has been articulated by our en banc court as follows:

> In order to be entitled to summary judgment, [the defendants] must demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *Clyburn v. 1411 K Street Limited Partnership*, 628 A.2d 1015, 1017 (D.C.1993). The record is viewed in the light most favorable to the party opposing the motion. *Graff v. Malawer*, 592 A.2d 1038, 1040 (D.C. 1991). On appeal, we must assess the record independently, but the substantive standard applied is the same as that utilized by the trial court. *Northbrook Ins. Co. v. United Servs. Auto Ass'n*, 626 A.2d 915, 917 (D.C.1993).

*Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C.1994) (en banc), *accord, Claytor*, 662 A.2d at 1380–81.

 On summary judgment, the court does not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Claytor*, 662 A.2d at 1381. "Any doubt as to whether or not [a genuine] issue of [material] fact has been raised is sufficient to preclude a grant of summary judgment." *McCoy v. Quadrangle Dev. Corp.*, 470 A.2d 1256, 1259 (D.C.1983). Accordingly, if an impartial trier of fact, crediting the non-moving party's evidence, and viewing the record in the light most favorable to the non-moving party, may reasonably find in favor of that party, then the motion for summary judgment must be denied. *See Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 199 (D.C.1991) ("[t]o summarize, the test for deciding a motion for summary judgment is essentially the same as that for a motion for a directed verdict") (citing *Anderson*, 477 U.S. at 252–53, 106 S.Ct. 2505).

B. *Causation.*

 "It is, of course, incumbent on the plaintiff in any product liability action to show that the defendant's product was the cause of his or her injuries." *Claytor*, 662 A.2d at 1381. This court has adopted the proximate cause standard set forth in the RESTATEMENT (SECOND) OF TORTS, § 431 (1965), which provides as follows:

> The actor's negligent conduct is a legal cause of harm to another if:
>
> (a) his conduct is a *substantial factor* in bringing about the harm, and
>
> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

(*Quoted in Claytor*, 662 A.2d at 1381–82; emphasis added in *Claytor*.) All of the defendants contend that they were entitled to summary judgment as a matter of law

---

to the risk of developing the disease and also contributes to the risk of progressing once you have the disease. So it's impossible to pick out one particular exposure and say that's the culprit. Each and every exposure contributes to it and that's been shown in a number of different studies that there's this dose response relationship. The more you get exposed, the higher your risk of developing the disease is and the more you get exposed, the higher your risk of progressing with that disease.

691 A.2d at 104.

because, viewing the record in the light most favorable to the plaintiff, Weakley has failed to present evidence of causation sufficient to raise a genuine issue of material fact with respect to that issue. We do not agree.

The logical starting point of our discussion is this court's decision in *Claytor*. In that case, three plaintiffs—Claytor, Keelan, and Turner—claimed that they had suffered injury as a result of coming into contact with asbestos products manufactured or supplied by various combinations of the defendants. The trial court granted summary judgment in favor of the defendants, concluding that each plaintiff had failed to prove causation. This court affirmed as to Claytor and Keelan, but reversed in part as to Turner.

The difficulties encountered by Claytor and Keelan were legion. Basically, neither man was able to present evidence that he was at any location at a time when any of the defendants' products was present.[5] Any harm that Claytor or Keelan may have suffered from the defendants' products was entirely speculative.

Turner's situation vis-a-vis one of the defendants, however, was different:

> Turner's case is significantly stronger, however, with regard to his exposure to asbestos at the White House. He testified that during a period of eleven months he worked in the same room— "everyone" was working in the same room—where asbestos pipes were being cut, and he specifically identified the manufacturer of those products as Owens–Corning. This testimony may or may not persuade a jury to return a favorable verdict, but it is at least sufficient to raise a material issue of fact as to whether Turner's exposure to Owens–Corning products was a substantial factor in causing his injuries.

*Id.* at 1386–87.

The reasoning that led to the affirmance of summary judgment against Claytor and Keelan, but the partial reversal as to Turner, was articulated by Judge Terry, writing for the court, as follows:

> Appellants Claytor and Keelan attempt to raise genuine issues of material fact by offering statements from persons who identify certain asbestos products that were present in the general vicinity where Claytor and Keelan, at some time, may also have been present. That is not enough. A mere showing that appellants worked at jobsites where appellees' asbestos products were used at some point will not give rise to an inference, sufficient to defeat summary judgment, that appellants themselves may have been exposed to those products. (Citations omitted.) *What is minimally required, and what Claytor and Keelan failed to present, is proof that appellants*

---

5. As to Claytor, the court wrote, *inter alia:*
 Claytor referred only to entire decades during which, at some point, he worked at a jobsite where asbestos products might have been present; for example, he said that he worked at Saint Elizabeths Hospital "in the '60's ... at two or three different times." He also testified that he was exposed to asbestos at Catholic University because "all the buildings had asbestos in them," but he did not say when or how long he worked at Catholic University—and of course he did not identify any of the asbes-

tos products that were in "all the buildings."
662 A.2d at 1385. The court made the following observations with respect to Keelan:
 Keelan offered testimony that he was present at numerous jobsites where he believed asbestos products were used. Fatal to his cause, however, is his failure to specify the dates when he was present at any of these sites when asbestos made by any appellee was in use.
*Id.*

*and the defendants' products were in the same place at the same time.*

*Id.* at 1384–85 (emphasis added).

We followed Claytor's "same place at the same time" standard in *Alliegro:*

> [W]e stated [in *Claytor* that] "what is minimally required ... is proof that appellants and defendants' products were in the same place at the same time." 662 A.2d at 1384–85.... [R]easonable jurors could reasonably infer that Mr. Alliegro had been present in the area when the remodeling contractor used Armstrong asbestos-containing products to remodel the heating system, and that Mr. Alliegro inhaled the asbestos dust because it was visible to the naked eye as a "cloud" or "smoky" substance that "suspended" itself in the air. Dr. Schwartz testified that "every exposure [of Mr. Alliegro to asbestos] contributed substantially to the development of his pulmonary fibrosis, ... his asbestosis and contributed to the progression of his asbestosis."

691 A.2d at 107. In light of the foregoing discussion, we reversed the trial court's entry of judgment as a matter of law in favor of the defendant and remanded for further proceedings.

### C. *Claytor and Alliegro applied.*

■ The "same place at the same time" standard, articulated in *Claytor* and followed in *Alliegro,* provides the key to Weakley's appeal. Weakley has stated under oath that he "frequently" worked on boilers manufactured by each of the appellees, and that he has thus been present at

the same place and at the same time, and "regularly" exposed to, the asbestos that he attributes to the appellees. It is true that as to two of the defendants—Foster Wheeler and Marley—Weakley has not been able to identify the time or place of any contact with those defendants' products.[6] Nevertheless, he has asserted that he has "frequently" been in the immediate presence of, and has worked on, these defendants' boilers. If he were to testify to that effect at trial, and if the trier of fact were to believe him, we discern no logical reason why such evidence should be deemed insufficient to satisfy the "same place at the same time" minimum standard.[7] Where a plaintiff remembers the identity of the manufacturer, but cannot recall, decades after the fact, where and when he came into contact with that manufacturer's product, that understandable incompleteness of recollection should not end the case for the plaintiff, at least until he has had the opportunity for discovery. Obviously, discovery may well strengthen (or weaken) Weakley's case. We do not read the "same time and same place" minimum standard as requiring the plaintiff to recall and specify a *particular* time and a *particular* place.

■ Weakley must, of course, also establish that his exposure to each defendant's product was a "substantial factor" contributing to his having contracted asbestos. For summary judgment purposes, however, this element is satisfied by Dr. Casolaro's expert testimony. This witness' analysis may not be without its difficulties,[8] and his diagnosis could perhaps

---

6. This differs significantly from the situation of Turner in *Claytor* and of the plaintiff in *Alliegro,* both of whom had prolonged contact with the defendant's product at a known place and time.

7. Obviously, if discovery were subsequently to disclose that a defendant's boilers or asbestos

products were not at any location at which Weakley was present, Weakley's position would be precarious at best.

8. Suppose that a plaintiff has had 10,000 encounters with asbestos, but only one brief exposure to a particular defendant's asbestos

come under adversarial fire, but such issues are for the trier of fact, and are not suitable for resolution by summary judgment. Indeed, similar testimony was cited in support of our decision in *Alliegro.* In their briefs, several of the defendants rely on the "frequency, regularity and proximity test" adopted by the court in *Lohrmann*, 782 F.2d at 1162. In *Claytor*, one judge wrote a concurring opinion recommending adoption of the *Lohrmann* standard, but the majority of the court declined to join him. 662 A.2d at 1387. We likewise do not adopt *Lohrmann* as the law of this jurisdiction.[9]

We recognize that our disposition is not consistent with several Superior Court decisions. In *Cumberland v. Owens–Corning Fiberglas Corp.*, CA Nos. 98–6265+ (Super.Ct.D.C.2002), for example, the trial judge, relying largely on *Lohrmann* and her reading of *Claytor*, stated that

in determining whether a particular Plaintiff can defeat a motion for summary judgment, the Court will look for evidence indicating exposure to a specific Defendant's product on a regular basis over some extended period of time in proximity to where the Plaintiff worked.

Specifically, Plaintiffs should identify the asbestos-containing product to which Plaintiff was exposed, the particular Defendant(s) liable for the product, and the role the Defendant played in the presence of that product at that site (*e.g.*, manufacturer, distributor, supplier, installer). Plaintiffs should identify the work site (including the specific buildings within work sites, if applicable), provide time periods for each work site, and discuss the frequency, duration and proximity of exposure to the asbestos-containing product.

In the instant case, the trial judge, in awarding summary judgment to the various defendants, used reasoning essentially identical to that in *Cumberland.*

product. Is that single exposure really a "substantial factor" in bringing about the plaintiff's injury? We note, in this connection, the definition of "substantial" in the RESTATEMENT (SECOND) OF TORTS § 431, cmt. (a):

The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense" which includes everyone of the great number of events without which any happening would not have occurred.

9. In *Lohrmann*, the court declined the appellants' invitation to

... adopt a rule that if the plaintiff can present any evidence that a company's asbestos-containing product was at the workplace while the plaintiff was at the workplace, a jury question has been established as to whether that product contributed as a proximate cause to the plaintiff's disease. 782 F.2d at 1162. The court pointed out that

... when one considers the size of a workplace such as Key Highway Shipyard, the mere proof that the plaintiff and a certain asbestos product are at the shipyard at the same time, without more, does not prove exposure to that product.

*Id.* In this case, Weakley asserts not just that he was at a workplace at which the defendants' asbestos-containing products were present, but that he regularly and frequently serviced, and thus worked on and in the immediate vicinity of, the defendants' boilers; that he was "regularly" exposed to the asbestos contained in these boilers; and that he contracted asbestosis as a result. In any event, the *Claytor* standard is less exacting than some of the language in *Lohrmann;* that is why, for example, the author of this opinion did not join the one-judge concurring opinion in *Claytor* which would have adopted *Lohrmann's* "frequency, regularity, and proximity" test.

With due respect to the court in *Cumberland* and to the trial judge in this case, we are of the opinion that this standard is too exacting, especially where, as here, the plaintiff has produced expert evidence (Dr. Casolaro's affidavit) to the effect that *every* encounter with an asbestos product contributes significantly to the contracting of asbestosis. Each of the defendants in this case had asbestos-containing boilers. Unlike the plaintiffs in *Lohrmann* and *Cumberland,* Weakley alleges that he frequently worked on these boilers, and not merely in the areas where the boilers were located.

Asbestosis, as we have seen, may take a great many years to develop. Memories fade, particularly when, at the time, the plaintiff had no reason to recall or record the information. Under these circumstances, we conclude that adoption by this court of the trial court's approach in *Cumberland* would prematurely doom potentially meritorious cases brought by individuals who may well have suffered severe harm through exposure to one or more of the particular defendants' products. This is especially true where, as in this case, the plaintiff has been precluded from bolstering his memory of long ago events with any discovery at all. A plaintiff who has contracted asbestosis and who has alleged that he had frequent contacts with the defendants' asbestos-containing boilers should not be required to produce, at the outset, as a matter of course, information that in most cases is likely to be impossible to recall.

■■■ Raising a separate issue, appellee Oakfabco also contends that it is entitled to summary judgment because "... plaintiff's mere naming of the maker of a boiler, not the manufacturer or supplier of the asbestos product to which he claims exposure, is insufficient." In his affidavit, however, Weakley asserted, ostensibly on personal knowledge, that "[e]ach of these boilers was manufactured and delivered to the site of installation with asbestos-containing materials already incorporated." Under these circumstances, a genuine issue of material fact is presented, and summary judgment is inappropriate. "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1 (1998). Non-manufacturing sellers in the distribution chain are strictly liable. *Id.,* cmt. a. "A ... manufacturer may be held liable in damages for defective component parts manufactured by another ... if the ... manufacturer incorporated the defective component into its finished product." *Ford Motor Co. v. Wood,* 119 Md.App. 1, 703 A.2d 1315, 1331, *cert. denied,* 349 Md. 494, 709 A.2d 139 (1998).[10]

---

10. Cleaver Brooks contends that the statement in Weakley's affidavit to the effect that the boilers were supplied to the defendants and installed with asbestos products already incorporated in them conflicts with his deposition testimony that he did not install the boilers and does not know who did. According to Cleaver Brooks, this part of the affidavit should be disregarded as a "sham," apparently on the theory that if Weakley neither installed the boiler or knew the installers' identities, he could not know what the boilers contained at the time of installation. *See*

*Hancock v. Bureau of Nat'l Affairs,* 645 A.2d 588, 590–91 (D.C.1994); *cf. Hinch v. Lucy Webb Hayes Nat'l Training Sch. for Deaconesses and Missionaries Conducting Sibley Mem. Hosp.,* 814 A.2d 926, 929–31 (D.C. 2003). Weakley responds that there is no contradiction and that no specific question addressing the assertion in his affidavit was posed to him during his deposition.

Cleaver Brooks may or may not have a point, but it is not a matter that we as an appellate court can decide in the first instance when the claim is being raised for the first

In further support of Oakfabco's position that it cannot be held liable to Weakley for exposure to its boilers unless Oakfabco manufactured the asbestos product (rather than the boiler), Oakfabco relies on a single sentence in our opinion in *Claytor.* There, we said that testimony presented by one of the plaintiffs "... identified only the maker of the pipe itself (Rick–Weld), not the maker of the asbestos product from which the pipe covering was made." 662 A.2d at 1385. This statement was not a part of our holding and does not stand for the proposition for which Oakfabco cites it. Rick–Weld, the manufacturer of the pipe in question, was not a party, and we assuredly did not hold in *Claytor* that if the plaintiffs had proved exposure to pipes or boilers manufactured or supplied by the four appellees—Owens–Corning Fiberglas Corp., Owens–Illinois, Inc., Pittsburgh Corning Corp., and GAF Corp.—they would not have been entitled to recovery if a non-party had manufactured the asbestos products in the pipes or boilers manufactured or supplied by the appellees. In fact, in reversing summary judgment which had been granted by the trial court to one of the appellees, we stated that "the standard set forth in section 431 of the Restatement is clearly met by the evidence of Turner's exposure to Owens–Corning products at the White House...." *Id.* at 1387. This statement was not made contingent on whether Owens–Corning manufactured the specific asbestos-containing product or simply incorporated that product into its pipes or boilers.[11]

Oakfabco also complains, not unreasonably, that Weakley's opposition to its motion for summary judgment contained inadmissible documents not produced during discovery, including Weakley's Revised Work History and his affidavit. Oakfabco made the same claim in the trial court. The judge did not address the issue in his order, but he did refer therein to documents provided after the close of discovery. The judge thus apparently considered these documents, and no motion was made to strike them or to obtain a ruling on Oakfabco's objection. We are not prepared to resolve an issue on which the trial court never ruled. In any event, even Weakley's original answers to interrogatories and Work History satisfied *Claytor's* "same place at the same time" standard, and although the issue would be closer, summary judgment could not stand even without the materials provided by Weakley after the close of discovery. In sum, we conclude, for all of the foregoing reasons, that summary judgment should not have been awarded to any of the moving defendants.

## III.

### THE PROTECTIVE ORDERS

As we have previously noted, the trial court issued protective orders precluding Weakley from taking the Rule 30(b)(6) depositions of Burnham and Fos-

---

time on appeal. If Cleaver Brooks had filed a motion in the trial court to strike the affidavit, Weakley could have responded and, *e.g.,* explained the claimed basis of his knowledge. The trial judge could then have made an informed determination as to whether Weakley's deposition testimony and affidavit were so inconsistent as to render the challenged statement in the affidavit a "sham" as that term was used in *Hancock* and *Hinch.* Ab-

sent such a motion to strike, this court cannot simply reject and ignore the affidavit.

11. We do not agree with the Superior Court decisions, cited by Oakfabco, which appear to be to the contrary. *See Hayden v. Owens–Corning Fiberglas Corp.,* No. 99–3240 (Super.Ct.D.C.2002); *Davis v. Owens–Corning Fiberglas Corp.,* No. 98–8756 (Super.Ct.D.C.2002).

ter Wheeler.[12] The court (Zeldon, J.) did not provide reasons for her decision, nor did she specify what information Weakley would have to provide in order to be permitted to depose the designees of these defendants. In asbestos cases, however, it appears to be the practice in the Superior Court to require the plaintiff, prior to conducting any discovery, to identify, in answers to interrogatories, which of a defendant's products are alleged to have harmed the plaintiff, and at which jobsites. *See Anderson v. Armstrong World Indus., Inc.,* No. 93–10602 (Super.Ct.D.C.1995) (Levie and Graae, JJ.). The court opined in *Anderson:*

> Discovery should follow the filing of [a] well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.[13] Put differently, discovery is not the opportunity for a plaintiff to "discover" if he [or] she has [a] claim against a particular defendant.

In this case, the trial judge may have relied upon the authority of *Anderson.*

We review discovery orders for abuse of discretion. *Kay v. Pick,* 711 A.2d 1251, 1256 (D.C.1998). Exercise of discretion must, however, be founded on correct legal principles. *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991). The moving defendants have cited no appellate authority, and we are aware of none, precluding discovery where, as here, a party has stated under oath that he has frequently come into contact with a defendant's product, and has regularly been exposed to that defendant's asbestos-containing boilers, but (several decades later) does not recall precisely where or when. Indeed, the ambit of discovery afforded by Super. Ct. Civ. R. 26(b)(1) is broad:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to an issue involved in the pending action, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

We discern merit in Weakley's complaint that he "was thus caught in the 'Catch–22' created by the trial court. Mr. Weakley could not obtain the discovery without plenary knowledge and could not achieve plenary knowledge without discovery." To the extent that *Anderson* would preclude Weakley from conducting discovery of Burnham and Foster Wheeler, if he remembers that he frequently encountered these defendants' products but no longer recalls the exact time and place (when the

---

12. In the Notice of Deposition directed to Foster–Wheeler, Weakley requested that this defendant designate an officer, director, or managing agent to testify regarding a number of issues including:
 1. the *locations of boilers it manufactured,* sold or distributed in the District of Columbia, Maryland and northern Virginia from 1960–1975;
 2. its sale of boilers and/or asbestos-containing products to Capitol Boiler Works from 1960–1970 and to Allen Mitchell & Co. from 1969–1975;

 3. the identity of each asbestos-containing product and boiler it manufactured, sold or distributed—regardless of where—from 1960–1975; and
 4. the date and manner it suspected, concluded and determined that exposure to asbestos can cause asbestosis and cancer.

13. In the present case, there is no contention, nor could there be, that Weakley's complaint fails to state a claim upon which relief may be granted, either against Burnham or against Foster Wheeler.

information about time and place is likely to be readily available to the defendant), we cannot agree with the Superior Court's reasoning. As Weakley asks rhetorically in his reply brief, "[a]fter all, how hard is it for Foster Wheeler to open a file drawer and search for the presence of its boilers in Fairfax County Public Schools?" [14]

However that may be, we think that in the present case a reasonable solution, not unduly objectionable to any party, may be at hand. In their briefs, all three parties involved in this issue have cited without disapproval Judge Joyce Hens Green's decision in *Covington,* from which we have quoted at the outset of this opinion. Weakley asserts that he has provided the defendants with the information that *Covington* would require. Moreover, Foster Wheeler has advised us in its brief on appeal that

> Weakley offered to question the Foster Wheeler designee only [regarding] the location of each boiler it manufactured, sold or distributed and which were installed in the District of Columbia, Maryland and Virginia from 1964–1974 (i.e., topics 1–3 of his Notice of Deposition). JA at 160–61. Weakley proffered that he would seek to depose the witness on topics 4–16 of his Notice [o]f Deposition only if the first phase of inquiry revealed specific sites where a Foster Wheeler

boiler was used where Weakley worked. JA at 161.

In light of the foregoing, we are satisfied that the dispute over the protective orders can be readily resolved in a manner that will minimize the burden upon the defendants while still providing Weakley with relevant information. We therefore direct the trial court to apply to this record the ruling in *Covington* and to limit Weakley's inquiry along the lines described in the passage we have quoted from in Foster Wheeler's brief.

## IV.

## CONCLUSION

Product liability cases involving asbestos are very difficult, for plaintiffs generally learn of their illness so long after their exposure to asbestos that it is often all but impossible for them to be able to detail exactly where and when the events that caused their affliction occurred and by whom the exposure was caused. This reality has had consequences for asbestos litigation,[15] but it does not justify placing an unrealistic initial burden on plaintiffs who have contracted asbestosis or other diseases as a result of contact with asbestos-containing products.

---

**14.** This question, however, does not answer itself quite as readily as Weakley suggests. We are dealing here with boilers that were allegedly in the Fairfax County schools forty years ago, and a defendant may not have such information at its fingertips. If the search were to become genuinely burdensome or oppressive, however, the manufacturer would have a remedy. *See* Super. Ct. Civ. R. 26(b)(1) (discovery may be limited if shown to be unreasonably burdensome).

**15.**

As asbestosis litigation has developed over the past decade, most plaintiffs sue every known manufacturer of asbestos

products, and during the course of discovery some of the defendants are dismissed on motions for summary judgment because there has been no evidence of any contact with any of such defendants' asbestos-containing products. Other defendants may be required to go to trial but succeed at the directed verdict stage. Some defendants settle prior to trial, and these are usually the defendants whose products have been most frequently identified by the plaintiff and his witnesses as having been used by the plaintiff or by others in his presence or working near him.

*Lohrmann,* 782 F.2d at 1162.

■ A plaintiff who provides information under oath that he has had contact sufficient to do him harm with a defendant's product should not be expected to provide detailed information (which it is likely to be impossible for him to recall) either in order to be permitted reasonable discovery or to avoid the entry of summary judgment in favor of the defendants. In this case, we are of the opinion that the Superior Court set the bar too high for the plaintiff, both by issuing the protective orders and by granting summary judgment. Accordingly, the orders awarding summary judgment to the defendants are reversed. The protective orders are vacated. The case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*