**Starr L. MURPHY, Appellant,**

v.

**Nancy SCHWANKHAUS, Appellee.**

No. 05–CV–1486.

District of Columbia Court of Appeals.

Argued April 18, 2007.

Decided May 10, 2007.

---

Charles C. Parsons, Washington, DC, for appellant.

Jacquelyn M. Kramer, Hunt Valley, MD, for appellee.

Before WASHINGTON, Chief Judge, REID, Associate Judge, and FERREN, Senior Judge.

FERREN, Senior Judge:

This case concerns injuries to the plaintiff-appellant, Starr L. Murphy, who fell on the icy sidewalk in front of an apartment building owned by the defendant-appellee, Nancy Schwankhaus. According to Murphy, a tenant of Schwankhaus—allegedly her agent—had negligently shoveled the snowy sidewalk, leaving a patch of ice that caused Murphy to slip, fall, and fracture her leg and ankle—injuries, Murphy says, warranting recovery of damages against Schwankhaus. Perceiving no genuine issues of material fact, the trial court granted summary judgment for Schwankhaus, concluding that there had been no breach of any duty to Murphy. We affirm.

## I.

Snow fell in the Washington area on the evening of February 3, 2004. At approximately 9:00 the next morning, Murphy was walking along the shoveled sidewalk abutting 2304 40th Street, N.W., when she slipped and fell on an ice patch concealed from her view by a dusting of snow. Before she slipped, it had appeared to Murphy that, "aside from a light powder of snow still remaining on the sidewalk, the walkway [was] clear and safe for public foot travel." Nonetheless, under that light

snow an ice patch 3/4 of an inch thick had filled a depression in the sidewalk. After her fall, Murphy noticed that the ice patch had "light scratch marks" on it, which looked as though they had been left by a shovel. She testified on deposition that the sidewalk "looked like it had been cleared, pushed, you know, to the sides."

At the time of the accident, the property at 2304 40th Street, N.W. belonged to appellee Schwankhaus, who rented out the premises to a number of tenants. One of the tenants, Theresa Peters, acknowledged at her deposition that she had shoveled the sidewalk on February 3, 2004, at around 8:00 or 9:00 p.m.[1] As to whether she had known that there was ice on the sidewalk, she replied that she remembered thinking "it could be slick," but she could not say whether she remembered ice. She "just push[ed] [the snow] off to the side . . . just to clear so that [she and her dog] could get through," adding that "it wasn't a professional job." When shown a picture of the premises she acknowledged that she "possibly" recalled a disparity in grade in the walkway.[2] She also acknowledged that she had not attempted to break apart any ice. Rather, her efforts were just directed at removing the "free snow," in order "to clear the way to help [her] dog get through."

In her deposition, Schwankhaus testified that when it snowed, either she, a family member, or a tenant would clean up the sidewalk. She did not arrange for contractors to do the job. Instead, she kept a

shovel, salt, and possibly sand in a closet on the premises and thought that her tenants would "off and on" use salt to clear away ice patches.[3] In the 1990s, she had a tenant who took charge of clearing the sidewalk, but after he left, "nobody else . . . want[ed] to do anything." There were times, however, when she would reimburse her tenants for buying salt.

The parties also took the deposition of Joseph Nay, a neighbor who lived at 2315 40th Street, N.W. When asked whether the sidewalk in front of 2304 appeared to have been shoveled, Nay replied, "I wouldn't say so." Instead, it "just looked like it had been walked in a lot and kind of melted and refrozen. . . ."

The trial court, in considering Schwankhaus's motion for summary judgment and Murphy's opposition, concluded that there were "no material issues of fact for a jury to decide." Noting the parties' agreement that "the piece of ice on which plaintiff slipped . . . formed before any action [was] taken by the Defendant's tenant," the trial court ruled that,

> given the prevailing conditions, the sidewalk would have been slippery and would have presented a dangerous condition for pedestrians even if defendant's tenant had not undertaken to make the sidewalk somewhat more passable. When it is snowing or has snowed, all pedestrians are on notice that walking conditions may be dangerous and to use caution. Defendant's tenant attempted to clear only a portion of the walk,[4] and

1. Although it appears from Murphy's brief that Peters used a shovel provided by Schwankhaus, Peters testified that she used her own shovel, given to her by her sister.

2. Specifically, Murphy was asked: "Do you have a recollection of a disparity in grade here with this being a little higher than this right here, it might be a place to trap water or what have you"? She replied, "Possibly, possibly, because each area seem[s] to, you know,

demarcate, this is mine. So you could tell the discrepancy between. It wasn't a uniform shoveling job. So, sure, that seems logical."

3. It is undisputed that Peters did not spread sand or ashes on the sidewalk after she had shoveled.

4. When the trial court writes about "a portion of the walk," it is unclear whether the court is referring to deposition testimony by Peters

Plaintiff has not provided the court with any case that suggests the law required her to do more.

## II.

■ "Summary judgment is proper when a party fails to establish an essential element of his case upon which he bears the burden of proof." *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C.2006). To be entitled to summary judgment, Schwankhaus must demonstrate that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *Clyburn v. 1411 K Street Ltd. P'ship*, 628 A.2d 1015, 1017 (D.C.1993); Super. Ct. Civ. R. 56(c). We construe the record in the light most favorable to the party opposing summary judgment. *Weakley v. Burnham Corp.*, 871 A.2d 1167, 1173 (D.C.2005). On appeal, this court reviews summary judgment *de novo*, conducting an independent review of the record and applying the same substantive standard used by the trial court. *Varner*, 891 A.2d at 265; *Weakley*, 871 A.2d at 1173.

■ The party seeking summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact, and that party may rely upon the absence of proof concerning essential elements of plaintiff's claim. *See Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has demonstrated that there appear to be no genuine issues of

material fact, the burden shifts to the non-moving party to come forward with specific evidence showing, to the contrary, that genuine issues of material fact do exist. *See id.* at 198–99.

## III.

■ "It is a familiar principle that a person is liable to another in negligence only if it can be shown that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1097–98 (D.C.1994).

■ No duty existed at common law to keep the sidewalk in front of one's premises free from ice and snow. *See Albertie v. Louis & Alexander Corp.*, 646 A.2d 1001, 1003 (D.C.1994). In contrast to the common law, D.C.Code § 9–601 (2001) requires property owners to keep public sidewalks in front of their premises free of snow.[5] *See Reichman v. Franklin Simon Corp.*, 392 A.2d 9, 14 (D.C.1978) ("District of Columbia law unquestionably requires a property owner to clear abutting sidewalks."). That said, the law is clear that a private individual lacks standing to sue under the statute; only the District of Columbia government has authority to enforce it. *Id.* Accordingly, in line with the result at common law, "a real property owner is under no duty to keep the sidewalk abutting its property clear of snow and ice for the benefit of pedestrians." *Id.*; *accord Albertie*, 646 A.2d at 1004

---

that she had shoveled only halfway across the property or her testimony that she had only removed the free snow on the walk, in contrast with the ice.

5. The statute provides:
It shall be the duty of every person, . . . in charge or control of any building or lot of land within the fire limits of the District of

Columbia, fronting or abutting on a paved sidewalk, whether as owner, tenant, occupant, lessee, or otherwise, within the first 8 hours of daylight after the ceasing to fall of any snow or sleet, to remove and clear away, or cause to be removed and cleared away, such snow or sleet from so much of said sidewalk as is in front of or abuts on said building or lot of land.

("We decline, under these circumstances, to read a private right of action in to the snow removal law."); *Radinsky v. Ellis*, 83 U.S.App.D.C. 172, 173, 167 F.2d 745, 746 (1948) ("It is held by the weight of authority that an individual does not have a cause of action against one who neglects to aid the municipality in meeting its obligations" to remove snow.).

In her motion for summary judgment, however, appellee Schwankhaus—quoting our *Reichman* decision—acknowledged "one exception" to this no-duty rule: "It has been held that a real property owner may be found liable if it acts in any manner to increase the hazard created by snow or ice accumulated on an abutting public sidewalk and such action proximately causes plaintiff's injury." *Reichman*, 392 A.2d at 13 (citing *Hecht Co. v. Hohensee*, 65 App. D.C. 328, 329, 83 F.2d 585, 586 (1936)).[6] Schwankhaus argued, however, that the exception did not apply to this case because there was no evidence that she had done anything "to increase any hazard that would have caused Plaintiff's injuries and damages."

In response, Murphy argued that Schwankhaus, through her agent, Peters, had increased the hazard created by the snow and ice by moving "just enough snow to provide the appearance of safe passage for pedestrian travel, but [leaving] a powder of snow that covered and concealed the ice patch at the point of the sidewalk defect."[7] In support of her position, Murphy relies not only on the *Reichman* "exception" to the no duty rule but also on the RESTATEMENT (SECOND) OF TORTS § 324A(a) (1965).[8] Under Murphy's theory of liability, therefore, when Peters began shoveling the walkway she created for herself a duty to break apart ice that could endanger others or to otherwise address the problem. In particular, according to Murphy, a jury could find Peters negligent either because she left enough snow to conceal the ice or because she should have foreseen that a later snowfall would conceal it.

■ We shall assume for sake of argument that, once a property owner undertakes (without legal obligation to pedestrians) to shovel snow on the sidewalk in front of the property pursuant to his or

**6.** Actually, this court has never "held" that this exception to the no-duty rule applies in the District of Columbia. The *Hecht Co.* case on which *Reichman* relied merely alluded to the possibility of such an exception, which was not at issue in the case before the court, saying: "There is no allegation that any action of the defendant increased the hazard that exists on sidewalks during the snow period of the winter." *Hecht Co.*, 65 App.D.C. at 329, 83 F.2d at 586. Because a decision on this alleged exception is not necessary to our disposition here, we decline to rule on its applicability under District of Columbia law, whether as an outgrowth of *Reichman* or by adoption of RESTATEMENT (SECOND) OF TORTS § 324A(a).

**7.** Appellant asserts that a material fact in dispute is whether Peters shoveled the entire walk or only a portion of it. Peters' testimony indicates that she shoveled only a portion of the walk, whereas Murphy's affidavit can be

interpreted to say that the entire sidewalk had been shoveled. Any dispute over this fact is not material, however, because the parties agree that Murphy slipped on the portion of sidewalk that Peters shoveled.

**8.** Section 324A of the RESTATEMENT (SECOND) OF TORTS provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) *his failure to exercise reasonable care increases the risk of such harm*, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking. [Emphasis added.]

her duty to the municipality—and does so in a manner that increases the risk of injury—the owner can be held liable in damages to any pedestrian who is injured by negligence attributable to the owner's snow-shoveling effort. *See supra* note 7. The question then becomes: on this record, are there genuine issues of material fact that leave room for a jury to consider whether the tenant's actions, allegedly attributable to Schwankhaus, were negligent and the proximate cause of Murphy's injuries? The answer is "no."

Murphy did present evidence that Peters interfered with the sidewalk; Peters admitted to removing some of the free snow. As appellee Schwankhaus pointed out in her motion for summary judgment, however, Murphy presented no evidence sufficient for a jury to find that this affirmative conduct made the sidewalk more hazardous. Because Peters did not do anything to cause water to collect and freeze on the sidewalk, the only question is whether her removal of snow from the ice patch—"possibly" aware of a "disparity in [the] grade" of the sidewalk where the water collected and froze—"increase[d] the hazard" created by the "snow or ice." *See supra* note 2. Murphy acknowledged that, at the time of injury, there was "a light powder of snow still remaining on the sidewalk." She proffered no evidence of how much snow had fallen on the sidewalk before Peters began to shovel. Thus, there is no evidence to indicate whether unshoveled snow over the ice patch would have been deep enough, and thus supplied traction enough, so that a pedestrian who walked over the snowy area with the ice patch underneath would have been less likely to slip than after the shoveling took place. A jury would have had to speculate as to whether, in fact, Peters increased the hazard. Appellant Murphy, therefore, failed to sustain her burden of coming forward with evidence essential to proving her claim. *See Beard,* 587 A.2d at 198–99.

In sum, there is no evidence that Peters's actions made the sidewalk more treacherous. Even if we assume, therefore, without deciding, that Peters was Schwankhaus's agent, there is no evidence that Schwankhaus created a risk not already present. *Compare Hecht Co.,* 65 App.D.C. at 330, 83 F.2d at 586 ("whether the snow was removed or not, the walk would have been icy and very rough, and since the defendant would not have been liable had it permitted the snow to remain, it is no more liable under the circumstances of this case by undertaking to clear a portion of the walk"), *with Klein v. United States,* 339 F.2d 512, 515 (2d Cir. 1964) (holding that landlord can be held liable for injuries caused by icy conditions where the landlord's affirmative negligence caused accumulation of ice, such as by washing steps with hot water which then froze).

As a matter of law, therefore, Schwankhaus owed no duty—and thus committed no breach of duty—that proximately caused Murphy's injuries. Summary judgment was properly granted.

*Affirmed.*